2002 UT 116

**STATE of Utah, Plaintiff
and Respondent,**

v.

**Larry G. BOHNE, Defendant
and Petitioner.**

**No. 20010116.**

Supreme Court of Utah.

Nov. 26, 2002.

Mark L. Shurtleff, Att'y Gen., Jeanne B. Inouye, Asst. Att'y Gen., Salt Lake City, Scott M. Burns, Cedar City, for plaintiff.

J. Bryan Jackson, Cedar City, for defendant.

Weston J. White, St. George, for amicus curiae.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Defendant, Larry Bohne, was convicted of the misdemeanor of contracting without a license in violation of Utah Code Ann. section 58–55–301 (1998). The court of appeals af-

firmed his conviction. *State v. Bohne*, 2001 UT App 11, 18 P.3d 514. We accepted defendant's petition for a writ of certiorari. We now affirm.

## BACKGROUND

¶ 2 Defendant constructs and sells modular homes to prospective homeowners without a license. He has been engaged in the business of building and selling modular homes since 1973. He assembles the homes on his property and then transports them to the purchaser's property. He does not perform any excavation, foundation, or utilities work, nor does he bear any responsibility for the installation of the homes. Defendant is not a licensed contractor, nor does he utilize the work of licensed subcontractors in his construction business.

¶ 3 Defendant was charged with four counts of violating Utah Code Ann. section 58–55–301 for sales occurring during 1996 and 1998. He contends that the statute does not require that he be licensed to engage in his business. He notes that all of his modular homes must meet the requirements of the general uniform building codes of construction before they can be transported to the purchasers, thereby ensuring their quality. Also, since construction takes place on his property and the homes are later transported to another locale, defendant argues that the homes should not be considered "buildings," but rather, his personal property. Thus, defendant contends, section 58–55–301 does not apply to him and he is relieved of the requirement of obtaining a license in order to conduct his business of constructing and selling modular homes.[1]

## STANDARD OF REVIEW

¶ 4 We review the appellate court's statutory interpretation for correctness. *Hous. Auth. of County of Salt Lake v. Snyder*, 2002 UT 28, ¶ 10, 44 P.3d 724.

## ANALYSIS

¶ 5 To determine whether the Construction Trade Licensing Act (the "Act") requires defendant to obtain a license to construct and sell modular homes, we must analyze the definition of the term "construction trade" and the exemption provided in the Act, as well as the language of the Uniform Commercial Code ("UCC").

¶ 6 The crux of this case is whether the modular homes at issue are "buildings" or "personal property." The Act requires:

> Any person engaged in the construction trades licensed under this chapter, or as a contractor regulated under this chapter, shall become licensed under this chapter before engaging in that trade or contracting activity in this state unless specifically exempted from licensure under Section 58–55–305.

Utah Code Ann. § 58–55–301(1)(a) (1998).

¶ 7 We must ascertain what is meant by "construction trade" to determine if defendant is engaged in a construction trade relevant to this statute. The Act defines the term as:

> any trade or occupation involving construction, alteration, remodeling, repairing, wrecking or demolition, addition to, or improvement of any building ... other than personal property.

Utah Code Ann. § 58–55–102(8) (Supp.2001).

¶ 8 The Act does, however, provide certain exemptions. The construction trade licensing requirements do not apply to:

> a person engaged in the sale or merchandising of personal property that by its design or manufacture may be attached, installed, or otherwise affixed to real property who has contracted with a person, firm, or corporation licensed under this

---

1. Defendant additionally challenges his conviction based on the ground that the trial court erred in placing upon him the burden of proof regarding his qualification for the statutory exemption. Since we have affirmed defendant's conviction based upon our holding that modular homes are not "personal property," whether or not defendant sold "personal property" to a licensed contractor for installation is inapplicable, since he sold "buildings." Thus, we need not reach the issue of who bears the burden of proving qualification for the exemption.

chapter to install, affix, or attach that property[.]

Utah Code Ann. § 58–55–305(6) (Supp.2001).

¶ 9 The defendant, in constructing these modular homes, clearly engages in "construction" as it is traditionally understood. The issue is whether defendant was engaged in the construction of buildings, in which case he would need to be licensed, or in the construction of "personal property" only. If the modular homes are indeed "personal property," and not "buildings," then he has not violated the Act in failing to obtain a license.

¶ 10 Defendant relies on the UCC in asserting that constructing modular homes does not fall within the construction trade, since the UCC treats modular homes as "goods." The UCC states that " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . . ." U.C.C. § 2–105(1) (1998); *see also* Utah Code Ann. § 70A–2–105(1)(2001). Defendant argues that because the modular homes were transferable at the time of sale, being constructed off-site and later transported to the sale site, the modular homes are "goods."

¶ 11 The majority of the court of appeals rejected defendant's argument and held that the modular homes are not "personal property," but "buildings." It did so without resolving the conflict posed by the UCC definition. We agree, but add the following clarification.

¶ 12 The majority opinion issued by the court of appeals is correct in asserting that the modular homes at issue come within the plain meaning of the term "building." The homes fit a common-sense definition of "building." The units are completed homes and are meant for human occupancy. They include assembled floor decking, exterior and interior walls, trusses, roof decking, rough electrical wiring, rough plumbing, rough mechanical systems, shingles, insulation, sheet rock, cabinets, interior and exterior painting, interior doors, finishing electrical, finishing plumbing, finishing mechanical equipment, and finishing exterior siding. The only thing left to do with the homes is to install them. The fact that the homes were not installed at the time of sale does not mean they were not "buildings" under the licensing Act. We recognize the general principle that modular homes are "goods" under the UCC until affixed to real property, because the UCC defines goods to include all things which are "movable at the time of identification to the contract for sale. . . ." U.C.C. § 2–105(1); *see also* Utah Code Ann. § 70A–2–105(1). Indeed, many courts have traditionally held modular homes to be "goods" under the UCC. *See Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 20 (7th Cir.1979); *Stephenson v. Frazier*, 399 N.E.2d 794, 797 (Ind. Ct.App.1980); *Joswick v. Chesapeake Mobile Homes, Inc.*, 362 Md. 261, 765 A.2d 90, 92 (2001).

¶ 13 Nevertheless, we decline to apply the UCC definition of modular homes as "goods" for purposes of this statute. The UCC governs contracts and contractual transactions. The Act at issue here is not a contract and does not concern a contract. Rather, it is a licensing requirement, the purpose of which is to ensure the safe construction of buildings for the benefit of the consumer. The UCC approach has little relevance and, we determine, no applicability to its interpretation.

¶ 14 Our holding is consistent with Utah precedent. In *John Wagner Assoc. v. Hercules, Inc.*, 797 P.2d 1123 (Utah Ct.App. 1990), the court held that "for purposes of the Payment Bond Statute, the modular buildings are to be regarded as realty as a matter of law" despite the UCC definition including modular homes as goods. *Id.* at 1126. The court so held in that case in order to "give full effect to the purpose of the Payment Bond Statute," and thus the legislature's intent in passing that statute. *Id.* at 1130. We join other courts in acknowledging that "pre-built [buildings], mobile or otherwise, . . . are a part of our changing society, and give recognition to the fact that the law must be responsive to the best interests of those whom it is designed to serve." *Yeager v. Cassidy*, 20 Ohio Misc. 251, 256, 253 N.E.2d 320, 323 (1969). Consequently, we extend the definition of "buildings" to include modular homes for purposes of this Act.

¶ 15 We do so to give full force to the legislature's intent in drafting the Act: public safety. We ascertain the legislature's intent by looking to the statute's plain meaning, and to its various provisions viewed as a whole. A reading of other provisions within the Act demonstrates the legislature's intent. Section 58–55–102(7)(i) includes a provision requiring licensing for "a person who builds any structure on his own property for the purpose of sale or who builds any structure intended for public use on his own property." *See* Utah Code Ann. § 58–55–102(7)(i) (1998). Thus, an unlicensed person may not build a structure upon his own property that will either be used or sold to others. Defendant qualifies as such an individual since the structures are intended for human occupancy and he sells them to individual consumers as part of a commercial enterprise.

¶ 16 Additionally, the exemptions built into the statute are narrowly tailored to ensure that any individuals constructing buildings that members of the public will enter must be licensed in order to engage in their construction trade. For example, the exemption excludes from licensing requirements sole owners of property only if they are "engaged in building no more than two residential structures per year on their property for their own noncommercial, nonpublic use...." Utah Code Ann. § 58–55–305(4)(1998). If private individuals cannot construct multiple buildings on their own property for their own use without obtaining a license, then contractors engaged in the commercial construction of buildings designed for the sale and the human habitation of others certainly are within the reach of the licensing Act.

¶ 17 That the legislature intended to exempt those engaged in construction in only the most narrow of circumstances reinforces the principle that public safety is the primary objective of the licensing statute. Exempting a modular home builder engaged in commercial enterprise from such licensing under section 58–55–305(6) would contravene the legislature's intent.

¶ 18 The plain meaning of the language of the statute is clear. The UCC does not govern the definition of "building" in this regulatory context. The public policy reasons behind the licensing requirements are compelling. The only way to give full force to the legislature's intent is to include modular homes in the definition of the term "building" found in the Act. We therefore hold that modular homes constructed off-site that are sold commercially fall within the reach of the Act. Thus, individuals engaged in such construction must obtain a license. Defendant is required by law to obtain a license, which he failed to do.

## CONCLUSION

¶ 19 We affirm defendant's conviction.

¶ 20 Associate Chief Justice DURRANT, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Chief Justice DURHAM's opinion.