2003 UT 58

**WASHINGTON COUNTY WATER CONSERVANCY DISTRICT, a water conservancy district organized under the laws of the State of Utah, Plaintiff and Appellant,**

v.

**Robert L. MORGAN, State Engineer of the State of Utah; Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, a Utah corporation sole; Clive G. Tapp, trustee of the Clive G. Tapp Trust; Renee Tapp Burton, an individual; and C. Laron Reynolds, trustee of the Claudius and Della Tapp Reynolds Trust, Defendants and Appellees.**

**No. 20010561.**

Supreme Court of Utah.

Dec. 23, 2003.

1126

Dallin W. Jensen, Paul D. Veasy, Salt Lake City, for plaintiff.

Eric C. Olson, Alexander Dushku, Salt Lake City, for the Corporation of the Presiding Bishop, Tapp, Burton, and Reynolds.

PARRISH, Justice:

¶ 1 In this case, we address the circumstances under which a water conservancy district has standing to bring an action for forfeiture of private water rights. Specifically, we address whether water conservancy districts have been granted special standing to press forfeiture claims without regard to whether such districts have a stake in the outcome of those claims. We also consider whether a party who protests a change appli- cation to the state engineer thereby acquires standing to assert forfeiture of water rights. Because we find that water conservancy dis- tricts have no special standing and because we hold that a party who protests a change application does not thereby acquire standing to assert forfeiture, we also address whether the water conservancy district in this case met the traditional test for standing by es- tablishing that it had an actual stake in the outcome of this particular forfeiture dispute.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Corporation of the Presiding Bish- op of the Church of Jesus Christ of Latter- day Saints (the "CPB") owns certain water rights in Washington County, Utah. When the CPB filed a change application with the state engineer to alter the nature, place of use, and points of diversion for these water rights, the Washington County Water Con- servancy District (the "Conservancy Dis- trict") protested. The Conservancy District claimed that all or part of the CPB's water rights had been forfeited for nonuse accord- ing to the provisions of section 73-1-4 of the Utah Code.

¶ 3 The state engineer approved the CPB's change application. The state engineer's memorandum decision did not decide the question of forfeiture, noting and apparently agreeing with the CPB's position that a find- ing of forfeiture requires judicial action and therefore was beyond the state engineer's jurisdiction. The Conservancy District then filed a district court action for review of the state engineer's decision, challenging the ap- proval of the change application [1] and seek- ing a judicial declaration that the CPB had forfeited the water rights in question.

¶ 4 The trial court held that the Conser- vancy District's administrative protest to the CPB's change application did not give the Conservancy District standing either to chal- lenge the state engineer's decision in court or to assert forfeiture of the CPB's water rights. Rather, the trial court ruled that the Conservancy District's standing was contin-

---

1. In asserting its right to judicial review of the state engineer's decision, the Conservancy Dis- trict relied on section 73-3-14 of the Utah Code, which provides that "[a]ny person aggrieved by a decision of the state engineer may obtain judicial review" of that decision. Utah Code Ann. § 73- 3-14 (1989).

gent upon its demonstration that it would be affected in some way by the approval of the CPB's change application or a forfeiture of the CPB's water rights. After hearing conflicting testimony on these issues, the trial court found the evidence inconclusive. Because the Conservancy District had not carried its burden of showing a connection between its own water use and that of the CPB, the trial court found that the Conservancy District lacked standing and therefore entered judgment in favor of the CPB. We affirm.

## ANALYSIS

¶ 5 The Conservancy District argues that the trial court erred by conditioning the Conservancy District's standing upon demonstration of a measurable connection between the Conservancy District's own water rights and those of the CPB. The Conservancy District maintains that water conservancy districts have been given special statutory standing to press claims regarding water rights even where their own water uses would not be affected by the outcomes. In addition, the Conservancy District asserts that it acquired standing to challenge the state engineer's decision on the change application and to seek forfeiture of the CPB's water rights by virtue of filing a protest to the CPB's change application in the administrative proceedings before the state engineer.

█ ¶ 6 The Conservancy District also argues, in the alternative, that it satisfied tradi-

tional standing requirements by establishing that its water rights would be enhanced by any forfeiture of the CPB's rights. Finally, the Conservancy District contends that even if it failed to satisfy traditional standing requirements, it was entitled to press its claims under established exceptions to traditional standing requirements for claims of significant public importance. *See Nat'l Parks & Conservation Ass'n v. Bd. of State Lands,* 869 P.2d 909, 913 (Utah 1993) (setting forth the standards to be met under the two exceptions for issues of public importance); *see also Jenkins v. Swan,* 675 P.2d 1145, 1150–51 (Utah 1983). We address each argument in turn.[2]

## I. DOES THE WATER CONSERVANCY ACT CONFER STANDING ON THE WASHINGTON COUNTY WATER CONSERVANCY DISTRICT?

█ ¶ 7 As an entity charged to promote the public interest in matters of water use, the Conservancy District argues that it has been granted special statutory standing to assert forfeiture of private water rights regardless of whether it satisfies traditional standing requirements. This issue is one of statutory interpretation, which we review for correctness. *State v. Bohne,* 2002 UT 116, ¶ 4, 63 P.3d 63.

¶ 8 Section 17A–2–1401 of the Utah Code enumerates the purposes for which water conservancy districts were created.[3] It is

---

**2.** In an apparent attempt to shift focus from the standing issue, the Conservancy District also argues that appeals from orders of the state engineer approving change applications are subject to de novo review in the district court. The Conservancy District then asserts that the burden is on the CPB to establish each of the requirements for approval of the change application specified in section 73–3–8 of the Utah Code and that the CPB failed to meet this burden. However, standing is a jurisdictional requirement that must be satisfied before a district court may even entertain the question of whether the state engineer's decision was consistent with the requirements of Utah law. *Harris v. Springville City,* 712 P.2d 188, 190 (Utah 1986) ("[L]ack of standing is jurisdictional."); *Jenkins,* 675 P.2d at 1148 (holding that a party must have standing to invoke the jurisdiction of the court). The Conservancy District cannot avoid standing requirements by recasting the issue in terms of which

party bears the burden of proof once the court's jurisdiction has been established.

**3.** Section 17A–2–1401 of the Utah Code provides:

It is declared that to provide for the conservation and development of the water and land resources of the state of Utah and for the greatest beneficial use of water within this state, the organization of water conservancy districts and the construction or works as herein defined by such districts are a public use and will:

(1) be essentially for the public benefit and advantage of the people of the state of Utah;

(2) indirectly benefit all industries of the state;

(3) indirectly benefit the state of Utah in the increase of its taxable property valuation;

(4) directly benefit municipalities by providing adequate supplies of water for domestic use;

true that water conservancy districts have been charged to serve the public interest. It is also true that the public generally may benefit from the forfeiture of water rights when water is not being put to beneficial use. Nevertheless, the broad statements of purpose to be served by water conservancy districts are insufficient to establish statutory standing to seek to overturn approved change applications or to press forfeiture claims in cases where a district's own uses would not be affected.

¶ 9 Our conclusion in this regard is buttressed by the structure of the Water Conservancy Act. The general statements of purpose in section 17A–2–1401 of the Act are followed in section 17A–2–1413 by a specific enumeration of powers granted to water conservancy districts. These powers include, inter alia, the power to "appropriate and otherwise acquire water and water rights within or without the state," Utah Code Ann. § 17A–2–1413(2)(*l*) (2003), and to "exercise the power of eminent domain" to "take any property necessary to exercise powers granted to the district." Utah Code Ann. § 17A–2–1413(1)(a)(ii) (2003). They do not, however, include an express grant of power to enforce the beneficial use of water through the use of the water forfeiture statute, nor do they include an express grant of power to appeal the state engineer's decisions on change applications.

■ ¶ 10 The Conservancy District asserts that a member of a class that is intended to be benefitted by a statute necessarily has standing to enforce the requirements of the statute. We are, however, unpersuaded by this argument. Many statutes are intended to benefit the public generally, yet we do not construe them as conferring enforcement standing on the general public. This principle is illustrated by the forfeiture statute at issue in this case, section 73–1–4 of the Utah Code. The purpose of the forfeiture statute is to benefit the public generally by promoting the beneficial and efficient use of water. Nevertheless, we have never interpreted the forfeiture statute to confer on all members of the general public statutory standing to file forfeiture actions. Consistent with this approach, we decline to infer from the legislature's description of the general purposes to be served by water conservancy districts an intent to confer on such districts statutory standing to assert forfeiture of private water rights.

## II. DID THE WASHINGTON COUNTY WATER CONSERVANCY DISTRICT OBTAIN STANDING BY VIRTUE OF ITS PARTICIPATION IN THE CHANGE APPLICATION PROCEEDINGS BEFORE THE STATE ENGINEER?

■ ¶ 11 When a change application is filed with the state engineer, section 73–3–7(1) of the Utah Code permits "any person interested" to "file a protest with the state engineer." Utah Code Ann. § 73–3–7(1) (1989). In response to the CPB's change application, the Conservancy District filed such an administrative protest. The state engineer nevertheless approved the application. Section 73–3–14 of the Utah Code provides that "any person aggrieved by an order of the state engineer may obtain judicial review" of that order. Utah Code Ann. § 73–3–14 (1989). The Conservancy District

(5) directly benefit lands to be irrigated or drained from works to be constructed;
(6) directly benefit lands now under irrigation by stabilizing the flow of water in streams and by increasing flow and return flow of water to such streams;
(7) promote the comfort, safety and welfare of the people of the state of Utah, and it is therefore declared to be the policy of the state of Utah:
(a) to control, make use of and apply to beneficial use all unappropriated waters in this state to a direct and supplemental use of such waters for domestic, manufacturing, irrigation, power, and other beneficial uses;

(b) to obtain from water in Utah the highest duty for domestic uses and irrigation of lands in Utah within the terms of interstate compacts or otherwise;
(c) to cooperate with the United States and agencies thereof under the federal reclamation laws or other federal laws now or hereafter enacted and to construct and finance works in the state of Utah as herein defined and to operate and maintain the same;
(d) to promote the greater prosperity and general welfare of the people of the state of Utah by encouraging the organization of water conservancy districts as provided in this part.
Utah Code Ann. § 17A–2–1401 (1999).

contends that its administrative protest of the change application establishes it as a "person aggrieved" by the state engineer's decision, thereby entitling it to seek judicial review of that decision and to seek forfeiture of the underlying water rights. This argument raises the question of whether every "interested" person who protests a change application is also an "aggrieved" person entitled to judicial review of the state engineer's decision on that application. This is a question of statutory interpretation that we review for correctness. *Bohne,* 2002 UT 116 at ¶ 4, 63 P.3d 63.

¶ 12 In support of its claim that it acquired standing by virtue of its participation in administrative proceedings before the state engineer, the Conservancy District relies on our decision in *Bonham v. Morgan,* 788 P.2d 497 (Utah 1989). The Conservancy District interprets *Bonham* as having established that anyone who protests a change application thereby acquires a right to judicial review of the application.

¶ 13 *Bonham* is distinguishable from this case. In *Bonham,* we reversed a trial court's determination that the plaintiffs lacked standing to seek judicial review of the state engineer's decision approving a change application. *Id.* at 502. In that case, however, there was no question that the protesting plaintiffs could demonstrate particularized injury inasmuch as the defendants' water use caused flooding on the plaintiffs' property. *Id.* at 498. Rather, the question before the court was whether the injured plaintiffs, who were not holders of water rights, were nevertheless "aggrieved persons" entitled to judicial review of the state engineer's decision. We held that the plaintiffs did not need to be holders of water rights in order to be "aggrieved" within the meaning of Utah Code section 73-3-14. *Id.* at 502. We did not hold that the plaintiffs were exempt from showing that they were "aggrieved" or would be "aggrieved" by an adverse outcome.

¶ 14 Unlike the term "interested," the term "aggrieved" suggests the presence of actual or potential injury. One is not necessarily "aggrieved" within the meaning of section 73-3-14 simply by virtue of having protested a change application that was approved. The commonly understood meaning of the term "aggrieved" is consistent with our traditional standing requirement that a plaintiff show particularized injury. We see nothing in the statutory framework to suggest a legislative attempt to grant a right of judicial review to those who can show no such grievance or injury.

¶ 15 We find further support for a distinction between the protest right of "interested" persons under Utah Code section 73-3-7(1) and the right to judicial review granted to "aggrieved" persons in Utah Code section 73-3-14 in our case of *Badger v. Brooklyn Canal Co.,* 922 P.2d 745 (Utah 1996). In *Badger,* we concluded that the grant of a protest right in Utah Code section 73-3-7(1) does not carry with it an automatic right to appeal the state engineer's decision in court. We stated that section 73-3-7(1)

> does not create in any "interested" person a vested right to protest and subsequent entitlement to appeal. Rather, it simply allows those persons who have a genuine concern about proposed changes in water rights to voice those concerns before the State Engineer and, as an important corollary, provides the State Engineer with all viewpoints relevant to any proposal.

922 P.2d at 750 n. 9.

¶ 16 Our holding that an "interested" person does not become "aggrieved" simply by virtue of filing a protest in administrative proceedings before the state engineer is reinforced by the adverse practical consequences that would follow such bootstrapping. Had the Conservancy District attempted to obtain forfeiture of the CPB's rights *before* the CPB filed its change application, the Conservancy District would have been required to meet traditional standing requirements. Were we to interpret the phrase "any person aggrieved" to include all interested persons who protest a change application, the filing of a change application would expose the underlying water rights to otherwise unavailable forfeiture challenges, because an uninjured protestant would be able to insert its foot into an otherwise closed jurisdictional door. We doubt that the legislature intended the change application process to carry with it an increased risk of losing the rights underlying

the application. Equating the statutory term "aggrieved" with the traditional standing requirement of particularized injury thereby serves the interests of consistency by foreclosing what would otherwise be a loophole in forfeiture claim adjudication.[4]

## III. DID THE WASHINGTON COUNTY WATER CONSERVANCY DISTRICT MEET THE TRADITIONAL TEST FOR STANDING?

¶ 17 A plaintiff who has not been granted standing to sue by statute must either show that he has or would suffer a "distinct and palpable injury that gives rise to a personal stake in the outcome" of the case or meet one of the two exceptions to standing recognized in cases involving "important public issues." *Nat'l Parks & Conservation Ass'n*, 869 P.2d at 913; *see also Terracor v. Utah Bd. of State Lands & Forestry*, 716 P.2d 796, 799 (Utah 1986); *Jenkins*, 675 P.2d at 1148. The Conservancy District argues that the trial court erred by incorrectly applying the established common law test for standing. It also argues that the trial court erred in finding that it failed to satisfy common law standing requirements.

¶ 18 Generally,

the question of whether a given individual or association has standing to request a particular [form of] relief is primarily a question of law, although there may be factual findings that bear on the issue. We review such factual determinations made by a trial court with deference. Because of the important policy considerations involved in granting or denying standing, we closely review trial court determinations of whether a given set of facts fits the legal requirements for standing, granting minimal discretion to the trial court.

*Kearns–Tribune Corp. v. Wilkinson*, 946 P.2d 372, 373 (Utah 1997) (citation omitted).

Before we consider whether the factual evidence was sufficient to establish standing, we consider whether the trial court correctly interpreted and applied the rules governing standing developed in our case law. This is a question of law that we review for correctness without affording any deference to the conclusions of the trial court.

### A. Did the Trial Court Correctly Apply Traditional Standing Requirements?

¶ 19 The trial court held that the Conservancy District could not challenge the approval of the change application or assert forfeiture of the CPB's water rights unless the Conservancy District could show that it would suffer some demonstrable or measurable harm absent a forfeiture. In other words, the trial court required the Conservancy District to show a measurable connection between the water use of the CPB and the Conservancy District's own water use or proposed water use. The Conservancy District argues that this requirement is not supported by our case law and that the trial court, in effect, "created a new test for standing."

¶ 20 We have recognized that "the first and most widely employed standard" for establishing standing "requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute." *Nat'l Parks & Conservation Ass'n*, 869 P.2d at 913. This requirement that a plaintiff demonstrate such "particularized" injury is the "traditional" test for standing. *Soc'y of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1170 (Utah 1987).

¶ 21 The trial court held that the Conservancy District could show a particularized injury only by demonstrating some connection between the water use of the CPB and that of the Conservancy District. Absent such a connection, neither the state engi-

4. This jurisdictional loophole is premised on the assumption that the class of "interested" persons entitled to protest a change application under Utah Code section 73–3–7(1) is broader than the class of "aggrieved" persons entitled to seek judicial review of the state engineer's decision on the change application. That assumption is clearly correct in this case inasmuch as the state engi-

neer did not require the Conservancy District to make *any* showing in order to protest the CPB's application in administrative proceedings. We express no opinion today, however, as to the appropriate standard to be applied by the state engineer in determining who qualifies as an "interested" person entitled to file an administrative challenge to a change application.

neer's approval of the change application nor any forfeiture of the CPB's water rights would have any impact on the Conservancy District. The trial court's holding in this respect was appropriate. The trial court did not create a "new test for standing" as the Conservancy District contends. Rather, it correctly applied the traditional rule.

### B. Did the Washington County Water Conservancy District Establish a Connection Between its Own Water Use and That of the CPB?

¶ 22 In order to establish particularized injury under the traditional test for standing, the Conservancy District attempted to demonstrate a measurable connection between its own water uses and those of the CPB. The trial court found the evidence insufficient to show such a connection. In view of that failure, the trial court held that the Conservancy District lacked standing. The Conservancy District argues that these factual findings by the trial court are not supported by the evidence and therefore constitute error.

¶ 23 Whether the Conservancy District advanced sufficient evidence to establish that its water rights would be enhanced by any forfeiture of the CPB's rights is a question of fact. We must affirm the trial court's factual findings on this issue unless they are clearly erroneous. *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994).

¶ 24 The Conservancy District called witnesses who testified that the Ash Creek drainage, from which both the Conservancy District and the CPB draw water, was a "single, integrated hydrological unit," so that any extraction of water from wells within the drainage would affect downstream users of water both above and below ground. The CPB countered with witnesses who testified that the Ash Creek drainage is not an integrated hydrological unit, so that subsurface waters extracted from within the drainage

would not necessarily affect the rights of downstream users.

¶ 25 Results of empirical testing considered by the trial court did not show any connection between the water drawn from the CPB's wells and the water sources to which the Conservancy District has rights. This testing included comparisons of the chemical composition of the water, isotopic testing, and dye testing (undertaken sometime before the litigation). The trial court found that the isotopic testing, which compared the age of various isotopes found in water from different sources, weighed against any communication of water from the CPB's wells to the water supplies of the Conservancy District because the CPB water appeared to be much older than the Conservancy District's water. The Conservancy District did not present any persuasive evidence that this finding was erroneous. Where expert witnesses disagree and where the party carrying the burden of establishing standing is unable to present empirical or measurable evidence of a direct connection between the sources from which the parties have rights to draw water, we cannot conclude that the trial court erred in finding the evidence inconclusive. Accordingly, we affirm the trial court's factual determination that the Conservancy District failed to meet its burden of establishing particularized injury.

### C. Did the Washington County Water Conservancy District's Claims Qualify for the Exceptions to the Traditional Standing Rule as Issues of Public Importance?

¶ 26 Despite its inability to show that it would suffer a "distinct and palpable" injury if the CPB's water rights were not forfeited, the Conservancy District could nevertheless acquire standing to litigate an "important public issue [5] if 'no one else has

---

5. In some of our cases following *Jenkins*, 675 P.2d 1145, our discussion of the exception conferring standing on a plaintiff " 'if no one else has a greater interest in the outcome and if the issues are unlikely to be raised at all unless that particular plaintiff has standing to raise the issue[s],' " *Nat'l Parks & Conservation Ass'n*, 869

P.2d at 913 (quoting *Terracor*, 716 P.2d at 799), has not expressly limited the scope of the exception to issues of public importance. *See, e.g., State v. Mace*, 921 P.2d 1372, 1379 (Utah 1996); *Terracor*, 716 P.2d at 799; *Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 454 (Utah 1985). However, the public importance requirement

a greater interest in the outcome[,] the issues are unlikely to be raised at all unless that particular plaintiff has standing to raise the issues,' and the legal issues are sufficiently crystallized to be subject to judicial resolution." *Nat'l Parks & Conservation Ass'n*, 869 P.2d at 913 (quoting *Terracor*, 716 P.2d at 799). If the Conservancy District is unable to meet these requirements, it may nevertheless be afforded standing "in those limited circumstances in which a case raises issues that are so 'unique and of such great importance that they ought to be decided in furtherance of the public interest.' " *Id.* The trial court did not rule on the question of whether the Conservancy District was entitled to standing under either of these exceptions, but the Conservancy District has argued for their applicability, and we may consider this jurisdictional issue sua sponte. *Terracor*, 716 P.2d at 798.

¶ 27 Despite arguing for the applicability of these exceptions to this case, the Conservancy District has made no showing that the validity of the CPB's right to use groundwater in the Ash Creek drainage in Washington County is an issue of sufficient public importance to justify departure from traditional standing requirements. We remain open to the possibility that some issues concerning water rights might present questions of great public importance. That importance, however, likely would be found in a case where a large number of people would be affected by the outcome. The Conservancy District has not advanced any specific evidence that such is the case here. The trial court found that the Conservancy District owns and operates such significant water projects as to make it one of the principal suppliers of water to Washington County. When such a party is unable to show any connection between the disputed water use and its own, we have no reason to believe that the dispute will affect large numbers of people or involve an issue of great public importance. The Conservancy District therefore cannot rely on the public importance exceptions to the traditional rule requiring that a plaintiff show a particularized injury in order to attain standing.

## CONCLUSION

¶ 28 The Conservancy District has no standing either to assert forfeiture against the CPB or to obtain judicial review of the state engineer's decision approving the CPB's change application. The Conservancy District has not been granted standing by statute to press forfeiture claims against water rights without having to show that its own water uses would be affected by a forfeiture. Because the Conservancy District could not demonstrate any measurable connection between its own water use and that of the CPB, it has not been "aggrieved" by the state engineer's decision approving the CPB's change application and therefore has no right to judicial review of that decision. Finally, the question of water rights forfeiture in this case does not present an issue of sufficient public importance as to qualify the Conservancy District for an exception to the traditional rule of standing, which requires that the Conservancy District show a distinct and palpable injury. Accordingly, we affirm the judgment of the district court.

¶ 29 Associate Chief Justice DURRANT, Justice WILKINS, Judge THORNE, and Judge HENRIOD concur in Justice PARRISH's opinion.

¶ 30 Having disqualified themselves, Chief Justice DURHAM and Justice NEHRING do not participate herein; Court of Appeals Judge WILLIAM A. THORNE and District Judge STEVEN L. HENRIOD sat.

---

was enunciated in *Jenkins*. 675 P.2d at 1150 (predicating the exception "on the assertion that the issues involve 'great public interest and societal impact' " (citations omitted)). Moreover, in *National Parks & Conservation Ass'n*, 869 P.2d at 913, we explicitly limited the exception to issues of public importance. This limitation is appropriate because the notion that the underlying issues are unlikely to be raised unless standing is granted is not compelling where the issues are of no public import.