*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2015 UT 71**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STEPHEN W. RUPP, Trustee,
*Appellee,*

*v.*

ANGIE MOFFO,
*Appellant.*

No. 20130377
Filed August 14, 2015

Attorneys:

Stephen W. Rupp, Reid Tateoka,
Layton, for appellee

L. Miles LeBaron, Tyler J. Jensen,
Salt Lake City, for appellant

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and JUDGE TOOMEY
joined.

ASSOCIATE CHIEF JUSTICE LEE authored an opinion concurring in
the judgment.

Due to his retirement, JUSTICE NEHRING did not participate herein;
COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2014, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court:

### INTRODUCTION

¶1 Angie Moffo lived rent free for eight years in a home that belonged to her brother-in-law, Doug Rich. After Mr. Rich filed for Chapter 7 bankruptcy, the trustee, Stephen Rupp, sued Ms. Moffo for back rent under Utah's Uniform Fraudulent Transfer Act (the Act), sections 25-6-1 to -14 of the Utah Code. The district court, concluding that Ms. Moffo was the recipient of a fraudulent transfer, granted Mr. Rupp summary judgment and entered a $34,200 judgment against Ms. Moffo. On appeal, Ms. Moffo argues that Mr. Rupp lacks statutory standing under the Act and, in the alternative,

that Mr. Rich did not transfer an asset within the scope of the Act.[1] We hold that Mr. Rupp has statutory standing because, as a bankruptcy trustee, he is a creditor of Mr. Rich. But we hold that Mr. Rich did not transfer an asset to Ms. Moffo because the home was fully encumbered by a mortgage. We therefore vacate the judgment entered against Ms. Moffo and remand the case to the district court with instructions to enter summary judgment in favor of Ms. Moffo.

## BACKGROUND

¶2 The material facts in this matter are not in dispute. In 2003, Mr. Rich invited Ms. Moffo to move into his newly-acquired investment property. At the time, Ms. Moffo, a single mother of eight, was in serious financial trouble as the sole provider for herself and her children. Ms. Moffo and Mr. Rich agreed that she would not pay any rent, but would help out if she were able. Ms. Moffo lived in the house for eight years and never paid any rent.

¶3 In 2006, Mr. Rich obtained a mortgage on the home and signed a trust deed in favor of Bayrock Mortgage Company, which included a rent assignment provision. Three years later, Mr. Rich, who had suffered financial setback, became insolvent and stopped making payments on the mortgage. In October 2009, Bayrock served Mr. Rich with a notice of default, which triggered the rent assignment to Bayrock. In 2011, Mr. Rich filed for bankruptcy. At that time, the mortgage on the home was more than double the home's fair market value.

¶4 In 2012, Mr. Rupp, the appointed Chapter 7 bankruptcy trustee, filed suit against Ms. Moffo under Utah's Uniform Fraudulent Transfer Act. Mr. Rupp sought $1,300 per month in back rent from Ms. Moffo, asserting that Mr. Rich had defrauded his creditors by allowing her to live in the house rent free after he became insolvent in October 2009. On cross-motions for summary judgment, the district court ruled that Ms. Moffo was the recipient of a fraudulent transfer and ordered her to pay the bankruptcy estate $34,200. Ms. Moffo appealed. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

---

[1] Ms. Moffo presented an alternative argument on appeal based on the district court's denial of her motion to alter or amend the judgment. We need not address this argument because we find her first line of reasoning persuasive.

**STANDARD OF REVIEW**

¶5 This case comes to us on summary judgment. Because a district court's ruling on summary judgment is a question of law, we review it for correctness.[2] Moreover, we give no deference to a lower court's determination on an issue of statutory construction.[3]

**ANALYSIS**

¶6 Mr. Rupp brought this suit against Ms. Moffo under Utah's Uniform Fraudulent Transfer Act. Section 25-6-9 of the Act provides that a

> creditor may recover judgment for the value of [an] asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less.[4]

On the basis of this provision, Mr. Rupp secured a $34,200 judgment against Ms. Moffo for back rent.

¶7 Ms. Moffo raises two questions of statutory interpretation on appeal. The first question is one of statutory standing—is Mr. Rupp a "creditor" entitled to file suit under the statute? The second is whether the house in which she lived constitutes an "asset."

¶8 Our well-established rules of statutory interpretation dictate that, when interpreting any statute, "our primary goal is to effectuate the intent of the Legislature."[5] And the "best evidence" of that intent is the "plain language" of the provision read in context with the whole statute and related sections of the Code.[6] We begin with the question of standing.

## I. MR. RUPP HAS STATUTORY STANDING AS A CREDITOR PURSUANT TO HIS RIGHTS AS A BANKRUPTCY TRUSTEE

¶9    Ms. Moffo asserts that Mr. Rupp lacks statutory standing. To resolve this issue, we must determine to what class of plaintiffs the Act grants a right to sue and whether Mr. Rupp is within that

---

[2] *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56.

[3] *Wash. Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 7, 82 P.3d 1125.

[4] UTAH CODE § 25-6-9(2).

[5] *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254.

[6] *Id.*

class.[7] Ms. Moffo argues that only those with an actual interest in the property transferred are within the class of parties with standing. Because Bayrock held the trust deed for the home, had priority over Mr. Rupp, and because the first mortgage exceeded the home's value, Ms. Moffo reasons that Bayrock is the only creditor with standing to assert a claim against her under the Act. Mr. Rupp argues that the Act does not limit standing to those with an actual interest in the property transferred. Rather, he asserts that his status as a creditor of Mr. Rich pursuant to the United States Bankruptcy Code is sufficient to confer standing. We agree with Mr. Rupp.

¶10   A "creditor" has the right to recover judgment for the value of a fraudulently transferred asset.[8] A "creditor" is "a person who has a claim."[9] And a "claim" is

> a *right to payment* [from the debtor], whether or not the
> right is reduced to judgment, liquidated, unliquidated,
> fixed, contingent, matured, unmatured, disputed,
> undisputed, legal, equitable, secured, or unsecured.[10]

Notably absent is any indication that a creditor's standing is contingent on any actual interest in the property at issue. Instead, the

---

[7] *See Cedar Mountain Envtl., Inc. v. Tooele Cnty. ex rel. Tooele Cnty. Comm'n*, 2009 UT 48, ¶ 8, 214 P.3d 95; *Ball v. Pub. Serv. Comm'n* (*In re Questar Gas Co.*), 2007 UT 79, ¶¶ 45–50, 175 P.3d 545; *Wash. Cnty. Water Conservancy Dist.*, 2003 UT 58, ¶¶ 7–10. Statutory standing implicates a different analysis than constitutional standing. Statutory standing springs from an affirmative grant of authority by the Legislative and Executive branches for the courts to hear a case. In contrast, constitutional standing arises from the courts' inherent constitutional power to hear a case. *See Wash. Cnty. Water*, 2003 UT 58, ¶ 17; *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶¶ 17–18, 148 P.3d 960.

[8] UTAH CODE § 25-6-9(2); *see also id.* § 25-6-8(1) ("In an action for relief against a transfer or obligation under this chapter, a *creditor*, subject to the limitations in Section 25-6-9, may obtain . . . avoidance[,] . . . attachment[,] . . . injunction[,] . . . appointment of a receiver[, or] . . . any other relief the circumstances may require." (emphasis added)).

[9] *Id.* § 25-6-2(4).

[10] *Id.* § 25-6-2(3) (emphasis added).

Act gives standing to anyone with a "right to payment" from the debtor.

¶11 Our conclusion that all creditors have standing under the Act is buttressed by other provisions. For example, the Act provides that "[a] transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud *any* creditor of the debtor."[11] The use of the word *any* is significant. It triggers standing for all of the debtor's creditors if the debtor has actual intent to defraud any single creditor.

¶12 Accordingly, we hold that a party has standing as a creditor under the Act if the party has a right to payment from the debtor. And a creditor has that standing regardless of whether the creditor has any actual interest in the transferred property.

¶13 In this case, Mr. Rupp, as the trustee for Mr. Rich's bankruptcy, qualifies as a creditor under the Act. Pursuant to the United States Bankruptcy Code, a "trustee . . . [has], as of the commencement of the case, . . . the rights and powers of . . . a *creditor*."[12] The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor."[13] And a "claim" is a "right to payment."[14] These definitions are strikingly similar to those provided by the Act.[15] Accordingly, we hold that Mr. Rupp, as the bankruptcy trustee, has standing as a creditor under the Act.[16] We

---

[11] *Id.* § 25-6-5(1) (emphasis added).

[12] 11 U.S.C. § 544(a) (emphasis added).

[13] *Id.* § 101(10)(A).

[14] *Id.* § 101(5)(A).

[15] *See* UTAH CODE § 25-6-2(3), (4).

[16] In concluding that Mr. Rupp does not have standing, Justice Lee fails to look to the terms of Utah's Uniform Fraudulent Transfer Act. The Utah statute requires only that the plaintiff have a right to payment from the debtor. Mr. Rupp has asserted that he has that right. Under the plain language of section 544(a) of the Bankruptcy Code, Mr. Rupp has "the rights and powers of . . . a creditor," which the Bankruptcy Code in section 101 defines as a "right to payment" from the debtor. Justice Lee has never asserted the contrary.

As Justice Lee points out, Mr. Rupp cannot co-opt the rights of

(continued...)

therefore proceed to the second issue: What is a "transfer" under the Act?

## II. MR. RICH DID NOT TRANSFER AN "ASSET" TO MS. MOFFO

¶14   Ms. Moffo argues that even if Mr. Rupp has standing to sue, he is not entitled to recovery because Mr. Rich's agreement to let Ms. Moffo reside in the home did not constitute a transfer of an "asset" pursuant to the Act's definition of that term. Specifically, Ms. Moffo reasons that the Act's definition of an "asset" excludes property to the extent that it is fully encumbered, as was the case with the home in which Ms. Moffo lived. In response, Mr. Rupp argues that despite the plain language of the Act the intent of the

---

[16](...continued)
one creditor for the benefit of the creditors generally by asserting a claim that belongs to only one specific creditor. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700–01 (2nd Cir. 1989). He argues that Mr. Rupp is asserting a claim that belongs to Bayrock. But Mr. Rupp has not asserted a claim on behalf of Bayrock because the Act allows him to bring this claim in his own right as a creditor under 11 U.S.C. § 544(a). Accordingly, the cases Justice Lee cites on that point are inapplicable.

Moreover, Justice Lee's analysis turns on significant factual determinations that are part and parcel of the merits of the case. "Utah standing law operates as gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution," but it does not resolve them. *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 17 (internal quotation marks omitted). The Act does not require a plaintiff to show that he has a winning claim to establish standing; he only needs to qualify as a creditor. Under Justice Lee's reasoning, before a court can determine whether a party has standing to bring a claim under the Act, it must determine whether he has a perfected security interest and then determine the value protected by that security interest and the fair market value of the asset. In short, a court must determine that the plaintiff will succeed in recovering on his claim before it allows the case to proceed. This puts the cart before the horse by requiring extensive fact finding. The better course—and the course contemplated by the language of the Act—is that standing turns on whether the plaintiff is a creditor, not on whether he will ultimately be successful in recovering on his claim.

encumbered-asset exception, on which Ms. Moffo relies, "was never to suggest that if an asset is encumbered by a valid lien, it is somehow no longer an asset." We agree with Ms. Moffo because her reading is dictated by the plain language of the Act.

¶15 Under the Act, a "creditor may recover judgment for the value of [a fraudulently transferred asset] . . . or the amount necessary to satisfy the creditor's claim, whichever is less."[17] A "transfer" is defined as

> every mode, direct or indirect, absolute or conditional, or voluntary or involuntary, of disposing of or parting with an *asset* or an interest in an *asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance.[18]

At the heart of this definition is the meaning of the term "asset." The Act also defines this term. An "asset" is

> property of a debtor, but does not include . . . property *to the extent it is encumbered by a valid lien.*[19]

While the Act broadly defines "transfer," it specifically excludes from that definition the transfer of property "to the extent it is encumbered by a valid lien." Thus, the plain language of the Act dictates that property that is fully encumbered is not an "asset" within the Act's reach.

¶16 Mr. Rupp urges us to ignore this plain language, arguing that the Act cannot mean what it says. Instead, he asks us to derive a definition for the word *asset* from our opinion in *Zuniga v. Evans*, which considered the Uniform Fraudulent Conveyances Act not the Uniform Fraudulent Transfer Act.[20] But Mr. Rupp makes no effort to tie his proposed definition to the current statutory text. Further, his only case citation is to a court of appeals opinion dealing with a

---

[17] UTAH CODE § 25-6-9(2).

[18] *Id.* § 25-6-2(12) (emphases added).

[19] *Id.* § 25-6-2(2) (emphasis added). "'Valid lien' means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." *Id.* § 25-6-2(13).

[20] 48 P.2d 513, 516 (Utah 1935) (noting that section 1 of the Uniform Fraudulent Conveyances Act "defin[ed] 'assets' to mean property not exempt from liability for debts").

different issue.[21] Mr. Rupp's reasoning fails because it is unfounded in the Act's language or relevant case law.

¶17   Our conclusion that the transfer of fully-encumbered property does not constitute a fraudulent transfer under the Act is consistent with the Act's purpose. The Act provides a remedy for creditors who are actually harmed when a debtor transfers property; it does not provide a remedy in cases of only theoretical harm. For example, the Act is applicable when a debtor is insolvent because a solvent debtor who transfers property does not harm creditors.[22] Similarly, the Act applies to transfers where the debtor does not receive reasonably equivalent value in return.[23] In cases where the debtor does receive reasonably equivalent value, the transfer puts one asset beyond the reach of the creditors, but replaces the asset with one of equivalent value, thus avoiding any harm to creditors.

¶18   The same reasoning applies in the context of property that is fully encumbered by a valid lien. When such property is transferred, there is no harm done to either the creditor holding the lien—the secured creditor—or any other unsecured creditor of the debtor. The secured creditor is not harmed because it retains the right to proceed against the property by foreclosing its lien—regardless of whether the debtor currently holds the encumbered property.[24] And any unsecured creditors are not harmed because they would never have been able to recover their

---

[21] *See Tolle v. Fenley*, 2006 UT App 78, ¶ 24, 132 P.3d 63 (considering whether a debtor was insolvent—not whether transferred property is an "asset" under the Act when it is fully encumbered by a valid lien).

[22] *See* Utah Code §§ 25-6-3, 25-6-5(1)(a), 25-6-5(2)(i), 25-6-6(1)(b).

[23] *Id.* §§ 25-6-4, 25-6-5(1)(b), 25-6-6(1)(a).

[24] *See, e.g., id.* § 57-1-20 ("All right, title, interest and claim in and to the trust property acquired by the trustor, or the trustor's successors in interest, subsequent to the execution of the trust deed, shall inure to the trustee as security for the obligation or obligations for which the trust property is conveyed as if acquired before execution of the trust deed."); *id.* § 70A-9a-203 (The Uniform Commercial Code provides that "a security interest is enforceable against the debtor and third parties with respect to the collateral" if certain criteria are met.).

debt by means of the encumbered property. Thus, excluding property to the extent that it is encumbered by a valid lien is consistent with the Act's general no-harm-no-foul operation.

¶19   Mr. Rupp also tries to avoid the clear language of the Act by asserting that the possessory interest that Ms. Moffo enjoyed was distinct from the rents that were admittedly encumbered by the mortgage and were assigned to Bayrock. But this reasoning is a nonstarter because it is unmoored from the basic principles of property law.[25] Mr. Rupp seeks the economic value of Ms. Moffo's use of the house; that is rent.[26] Labeling rent as a "possessory interest" does not change its character. Were we to hold otherwise, we would vitiate Bayrock's secured interest in that rent by creating an exception whereby an unsecured party could extract rent-like payments from the collateral of a secured creditor before the secured creditor's claim is satisfied. We accordingly reject this alternative argument.

¶20   In this case, at all relevant times, the home in which Ms. Moffo resided was fully encumbered by Bayrock's mortgage and any rents that may have been owed were never property of the bankruptcy estate, but were payable to Bayrock. Indeed, Mr. Rupp has not asserted the contrary. Accordingly, we hold that Mr. Rich did not make a transfer to Ms. Moffo under the Act because the house was not an "asset" falling within its reach.

## CONCLUSION

¶21   Mr. Rupp has standing to sue Ms. Moffo under Utah's Uniform Fraudulent Transfer Act because he is a creditor pursuant to the rights granted to him as a bankruptcy trustee. But no "asset" was transferred from Mr. Rich pursuant to the Act's definition of that term. The house in which Ms. Moffo lived was fully encumbered by a mortgage and any rents were the property not of

---

[25] It would have been helpful had Mr. Rupp described Ms. Moffo's interest in the house in property-law terms. Did Mr. Rich give her a nonexclusive license or a lease? That distinction could be important in determining whether Mr. Rich "dipos[ed] of or part[ed] with an asset or interest in an asset." *Id.* § 25-6-2(12). Certainly the Legislature did not intend to penalize aging or dependent family members who are cared for by a debtor in his home.

[26] 52A C.J.S. *Landlord & Tenant* § 1077 (2015).

Mr. Rich, but of Bayrock. Accordingly, we reverse the ruling of the district court and remand with instructions to enter summary judgment in favor of Ms. Moffo.

---

ASSOCIATE CHIEF JUSTICE LEE, concurring in the result:

¶22    I concur in the judgment reversing the summary judgment entered by the district court in favor of bankruptcy trustee Stephen Rupp. I write separately, however, because I conclude that Rupp lacks standing to pursue a claim under the Utah Fraudulent Transfer Act (UFTA). For reasons explained below, I would reverse on the ground that Rupp's case should be dismissed for lack of standing.

¶23    The UFTA authorizes suit by "creditors" or by those with "a right to payment." *See* UTAH CODE § 25-6-2, -8. Under the majority's reading of UFTA and the Bankruptcy Code, trustees will always have standing. But the Utah Legislature, in conjunction with Congress, cannot alter the judicial power bestowed by our state constitution and the inherent limitations imposed by standing and similar doctrines. Rupp does not qualify for standing, and we should not reach the merits.

¶24    To have standing a trustee must show that "the challenged transfer involved an interest of the debtor in property, i.e., the debtor transferred property in which it had an interest." *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 316 (S.D. Tex. 2008) (requiring, for standing purposes under § 544 of the Bankruptcy Code, the trustee to prove the debtor had an interest in the transferred stock). The transfer that Rupp is seeking to set aside is the transfer of the possessory value to Moffo for a period of time post-dating Bayrock's perfection of its interest in that value by three years—a period of time in which the debtor had no interest in the possessory value.

¶25    The majority seems to agree. It observes that there is no injury here, and thus concludes that the trustee could never have had an interest in that to which he was not entitled. *See supra* ¶¶ 17-20 (using language such as "theoretical harm" and "no-harm-no-foul," and noting that under the "clear language of the Act," Rupp essentially had nothing he could lay claim to since the house and the rents flowing from it were entirely the property of the mortgage company).[1]

---

[1] *See Gregory v. Shurtleff*, 2013 UT 18, ¶ 65, 66, 299 P.3d 1098 (Lee,
(continued...)

A.C.J., LEE, concurring in the result

¶26   I see no basis for the trustee's standing in light of the above. Trustees may pursue claims "if [the] claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor." *See, e.g. St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 70–1 (2d Cir. 1989). Conversely, where a claim is "specific" to a creditor (such as when one creditor holds a perfected security interest), it is a "legal or equitable interest *only of the creditor*," and the trustee lacks standing to bring it. *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169–70 (3d Cir. 2002) (emphasis added).

¶27   Claims that are general, with no "particularized injury" arising from them, and that "could be brought by any creditor" are precisely the sorts of claims that belong to the bankruptcy estate. But claims that belong to one creditor, the denial of which would result in a "particularized injury" and which accordingly could *not* "be brought by any creditor of the estate" do not belong to the estate,

---

[1](...continued)
J., concurring in part and dissenting in part) ("[Under] a traditional formulation of standing . . . an assertion of injury [is required to] sustain[] a private action. . . . Standing is not a judge-made principle of judicial restraint subject to common-law evolution over time. It is an essential element of the constitutional provisions defining and limiting the judicial power"). The majority critiques my analysis on the ground that it "turns on significant factual determinations." *Supra* ¶ 13, n. 17. But the existence of factual questions has never been enough to establish standing. Standing requires a threshold showing of injury, causation, and redressability. *See City of L. A. v. Lyons*, 461 U.S. 95, 101–102 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (internal quotation marks omitted); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973) (holding that there is no standing because the injury cannot be remedied by the relief sought). And questions on those matters must be subject to factual investigation and resolution by the court. *See, e.g., City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 9, 233 P.3d 461 (acknowledging the "factual determinations" that must be made on standing issues, and the deference owed to district court findings on such issues). Otherwise the mere existence of a factual conflict would establish the court's jurisdiction.

and thus are not within the reach of the trustee. The trustee simply has no third-party standing to sue on behalf of such a creditor, and therefore suffers no particularized injury.

¶28 This problem is apparent in the district court's award of the rents to Rupp. After deeming the transfer fraudulent, the court awarded $34,200 to Rupp, to then be placed in the bankruptcy estate for creditors to sort through. But those rents belonged to *Bayrock*, not Rupp or any of the debtor's other creditors. Giving them to someone else is not an appropriate exercise of our judicial power. For that reason the trustee lacks standing. I would reverse on that basis, without reaching the merits.

————————