2009 UT 48

**CEDAR MOUNTAIN ENVIRONMENTAL, INC., a Utah Corporation, and Charles A. Judd, an individual, Plaintiffs and Appellants,**

v.

**TOOELE COUNTY, a political subdivision of the State of Utah, acting by and through the TOOELE COUNTY COMMISSION, Defendant and Appellee,**

**EnergySolutions, LLC, a Utah Limited Liability Company, Intervenor, Defendant, and Appellee.**

No. 20070320.

Supreme Court of Utah.

July 31, 2009.

James S. Lowrie, Lewis M. Francis, Salt Lake City, for plaintiffs.

Barton H. Kunz II, Craig V. Wentz, Salt Lake City, for defendant Tooele County.

Alan L. Sullivan, Troy L. Booher, Tyler L. Murray, Salt Lake City, for Intervenor-defendant Energy Solutions.

## AMENDED OPINION *

DURHAM, Chief Justice:

¶ 1 Appellants, Cedar Mountain Environmental and Charles Judd (collectively, CME), appeal the district court's grant of summary judgment to Tooele County (the County) and EnergySolutions, LLC and the denial of CME's cross-motion for summary judgment. We reverse.

## BACKGROUND

¶ 2 CME transports low-level radioactive waste. Interested in developing a nuclear material disposal site, CME once owned and, at the time of this appeal, leased property in Tooele County that adjoins the location of EnergySolutions' nuclear material disposal site.

¶ 3 To establish radioactive material disposal sites in Tooele County, applicants must obtain a conditional use permit and locate their disposal facilities within the hazardous waste corridor. In 1987 Tooele County granted EnergySolutions a conditional use permit to permanently dispose of radioactive waste material on the property located within Section 32. In April 2003 CME applied to Tooele County for a temporary conditional use permit to store low-level radioactive waste on Section 29, the adjoining property to Section 32. At the time, all of the Section 29 property was located in the hazardous waste corridor. EnergySolutions opposed this application. In September 2003, the Tooele County Planning Commission denied CME's conditional use permit application based on CME's failure to prove the need for another radioactive waste facility in Tooele County. The Tooele County Board of Commissioners affirmed the denial in March 2004.

¶ 4 In January 2005 CME granted a purchase option on parcel B of Section 29 to Broken Arrow, Inc. CME then sold the remaining property it owned in Section 29 to EnergySolutions. On April 12, 2005, the Tooele County Board of Commissioners enacted ordinance 2005–11, which changed the configuration of the hazardous waste corridor, greatly reducing its size. On April 18, 2005, the Tooele County Board of Commissioners approved EnergySolutions' request to amend the 1987 Conditional Use Permit to include its newly acquired Section 29 property. CME initiated a declaratory and inverse condemnation action on May 12, 2005 in the district court. CME argued that Tooele County's decisions to amend EnergySolutions' conditional use permit and reduce the size of the hazardous waste corridor ignored existing land use ordinances, notice requirements, and also evidenced a bias in favor of EnergySolutions.

¶ 5 In May 2005, after CME filed suit, Broken Arrow exercised its option to purchase parcel B of Section 29 from CME. Broken Arrow then sold this property to EnergySolutions. Following the sale, CME and EnergySolutions entered a lease agreement wherein CME leased parcel B from EnergySolutions.

¶ 6 In the district court action, EnergySolutions moved for summary judgment, arguing, among other things, that CME lacked standing to bring the case. CME responded with a cross-motion for summary judgment, asking the district court to find that the County's decisions to amend the conditional use permit and reduce the hazardous waste corridor were arbitrary, capricious, or illegal. The district court granted EnergySolutions' motion, holding that CME lacked standing to challenge the County's decisions and that CME's claims were moot.

## STANDARD OF REVIEW

 ¶ 7 "Granting summary judgment is appropriate only in the absence of any genuine issue of material fact and where the moving party is entitled to judgment as a

* Deletion in ¶ 8; ¶ 9 combined with ¶ 8. New ¶ 10 added.

matter of law." *S. Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶ 12, 200 P.3d 643. Therefore, when "reviewing a district court's grant of summary judgment, we review the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Id.* Further, we grant "no deference to the lower court's legal conclusions and review them for correctness." *Id.* More specifically, for standing, we review legal determinations for correctness, affording deference for "factual determinations that bear upon the question of standing," but minimal deference to the district court's application of the facts to the law. *Jones v. Barlow*, 2007 UT 20, ¶ 10, 154 P.3d 808. "[A]ppellate courts review the issue of mootness de novo." *Riverview Trenton R.R. Co. v. DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir.2007).

## DISCUSSION

### I. CME HAS STANDING TO CHALLENGE BOTH LAND USE DECISIONS

■■ ¶ 8 The County Land Use, Development, and Management Act (CLUDMA) governs land use challenges. Utah Code Ann. § 17–27a–801(2)(a) (2005 & Supp.2008). Under CLUDMA, "[a]ny person *adversely affected* by a final decision made in the exercise of or in violation of the provision of this chapter may file a petition for review of the decision with the district court within 30 days after the local land use decision is final." Utah Code Ann. § 17–27a–801(2)(a) (2005 & Supp.2008) (emphasis added). This statute incorporates the traditional standing test, which requires a party to (1) "assert that it has been or will be *'adversely affected* by the [challenged] actions'"; (2) "allege a causal relationship 'between the injury to the party, the [challenged] actions and the relief requested'"; and, (3) "request relief that is 'substantially likely to redress the injury claimed.'" *Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 19, 148 P.3d 960 (emphasis added)(alterations in original)(quoting *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983)). Thus, a party cannot fall back on the traditional standing test if it fails CLUDMA's statutory grant of standing, as both

tests share the element of an adverse effect. However, the statutory and the traditional common law tests are not the only avenues to gain standing; Utah law also allows parties to gain standing if they can show that they are an appropriate party raising issues of significant public importance—commonly referred to as the alternative standing test. *See id.* ¶ 35; *Wash. County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 17, 82 P.3d 1125 (stating that a party that cannot establish statutory standing must show standing under the traditional or alternative standing tests). In this case, CME argues it has alleged sufficient facts to establish both statutory and alternative standing. We address each argument in turn.

### A. CME Has Standing Under CLUDMA

■ ¶ 9 To obtain standing under CLUDMA, a party must show that it is adversely affected by a county land use decision. Utah Code Ann. § 17–27a–801(2)(a). Because this requirement is identical to the first element of traditional standing, we rely on traditional standing case law to interpret the statutory requirement. Recently this court described an adverse effect as an actual or potential injury that is "sufficiently particularized" to give a party a "personal stake in the outcome of the dispute." *Sierra Club*, 2006 UT 74, ¶ 23, 148 P.3d 960. Focusing on the personal stake, we explained in *Sierra Club* that as long as the injury has a direct effect on the complaining party, and the case presents a concrete dispute suited to resolution by the judiciary, "others may also share their concerns and be subject to the same specific, individualized injuries." *Id.* ¶ 24. Yet, if the injury complained of is a general injury to the community, the party does not have a personal stake in the dispute, and thus, has not shown that it is adversely affected. *Id.*

■■ ¶ 10 Specific to land use cases, we have determined that to have a personal stake in the outcome of a land use decision, a party must own or occupy property within the jurisdiction of the decision-making body. *Lund v. Cottonwood Meadows Co.*, 15 Utah

2d 305, 392 P.2d 40, 42 (1964).[1] On May 12, 2005, when CME initiated this action, it owned parcel B of Section 29. Therefore, because "[s]tanding is determined as of the time the action is brought," *Nova Health Sys. v. Gandy,* 416 F.3d 1149, 1154 (10th Cir.2005), CME has satisfied this requirement.

¶ 11 The appellees argue that while CME alleged a particularized injury, it failed to prove the potential of such harm; this argument is not supported by our case law. In most cases, a party must only allege an adverse effect to gain standing. Appellees rely on the court of appeals' recent decision in *Specht v. Big Water Town* to establish a proof requirement. 2007 UT App 335, 172 P.3d 306. In *Specht,* the court stated that to have standing to pursue a declaratory judgment a party must "allege and prove special damages." *Id.* ¶ 11. What the court of appeals intended by this statement is unclear; the court did not discuss the extent of proof required because the plaintiff had not sufficiently alleged a particularized injury. Further, the interpretation of this holding offered by the appellees is not supported by existing precedent. Instead, all the cited cases in *Specht* merely stand for the position that a party must have standing to seek declaratory relief—something very different from requiring a party to prove its alleged harm at the standing analysis stage. *See id.*

¶ 12 This court rarely imposes a requirement that a party prove its alleged harm, or even causation, to establish standing. *Sierra Club,* 2006 UT 74, ¶ 28 n. 3, ¶ 32, 148 P.3d 960. This makes sense because "[s]tanding questions arise early in the litigation, usually before discovery and the introduction of the evidence"; and to require a significant level of proof "would be unduly burdensome" because it would require "litigants to invest the time and money in gathering the evidence necessary to prove their claim only to be denied standing." *Id.* ¶ 32. Thus, "[g]enerally, the determination of whether a plaintiff has alleged a sufficient interest in order to satisfy the adverse impact part of the traditional test can be made on the face of the pleadings." *Id.,* ¶ 28 n. 3. Only in rare cases is fact-finding required to assess a party's interest in a case. *See id.* For example, in *Washington County Water Conservancy District v. Morgan,* the court required the plaintiff to prove the existence of an adverse impact because the "plaintiff's interest in the dispute depended upon whether [its] water originated from the same source as the defendant's." *Sierra Club,* 2006 UT 74, ¶ 28, n. 3, 148 P.3d 960 (discussing *Wash. County Water Conservancy Dist.,* 2003 UT 58, ¶¶ 2, 19, 82 P.3d 1125). As a result, the court required the plaintiff to show a measurable connection between its water source and the defendant's. In contrast, in *Sierra Club,* we found it sufficient that the plaintiffs lived and participated in outdoor recreation near the site of the plant that the Air Quality Board approved, and determined that they need not undertake fact-finding to establish their interest. *Sierra Club,* 2006 UT 74, ¶¶ 22, 28, 148 P.3d 960.

¶ 13 In this case, the adverse impact alleged by CME is akin to that in *Sierra Club.* That is, the potential harm to CME caused by the extension of the conditional use permit to EnergySolutions' Section 29 property is the result of the proximity of CME to the property; this is apparent from the pleadings. EnergySolutions alleges that CME has not sufficiently shown that the potential harm it alleges was caused by the amendment of EnergySolutions' conditional use permit. We disagree. First, as discussed above, to gain standing a party is not required to prove its interest or causation—at least not to the extent required at trial. *Id.*

---

1. EnergySolutions argues that Utah Code section 17–27a–802 and *Specht v. Big Water Town,* 2007 UT App 335, 172 P.3d 306, require a party to be a landowner to challenge a land use decision. We disagree. Section 17–27a–802 is not applicable to a challenge to a final decision but is instead a mechanism by which a county or landowner may enforce county ordinances and remedy any violations of those ordinances. *Compare* Utah Code Ann. § 17–27a–801(2)(a) *with id.* § 17–27a–802(1)(a). The court of appeals in *Specht* misinterpreted a similar municipal land use statute to be an additional requirement for standing to challenge final decisions of land use decision making bodies. *Id.* ¶ 9. Instead the court should have relied on *Lund v. Cottonwood Meadows Co.,* 15 Utah 2d 305, 392 P.2d 40, 42 (1964), as we do here, which requires ownership *or occupancy* to qualify as an adversely affected party under the land use statutes.

¶ 32. Second, proof that storage of radioactive waste in Tooele County polluted neighboring properties in the past is sufficient to establish a more than speculative potential of future harm to neighboring properties, such as CME. To establish standing, an alleged harm can be actual or potential. Thus, under the statutory grant, CME has alleged a particularized injury sufficient to give it a personal stake in the underlying dispute over the amendment of EnergySolutions' conditional use permit; therefore, CME has statutory standing to assert an action for declaratory judgment.

¶ 14 Similarly, CME has sufficiently alleged a particularized injury arising out of the County's decision to redraw the hazardous waste corridor. As described by CME, the new boundaries of the corridor "made it virtually impossible for [the] remaining Section 29 parcel to be used for waste disposal of any kind." We agree. Such exclusion directly affects CME and is sufficiently particularized to give CME a personal stake in the outcome of the dispute over the validity of the newly drawn hazardous waste corridor. Thus, we hold that CME has adequately alleged an adverse effect and thereby has statutory standing.

### B. CME Has Standing Under the Alternative Standing Test

¶ 15 A party has alternative standing when it is able to show that it is "an appropriate party raising issues of significant public importance." *Sierra Club*, 2006 UT 74, ¶ 35, 148 P.3d 960. As addressed by this court in *Sierra Club*, this test breaks down to two elements: (1) is the plaintiff an appropriate party; and (2) does the dispute raise an issue of significant public importance. *Id.* ¶¶ 36–39.

¶ 16 First, CME is an appropriate party to challenge the validity of the County's land use decisions. To establish its appropriateness, CME is not required to show that it is the *most* appropriate party; instead, it is required to show that it "has the interest necessary to effectively assist the court in developing and reviewing all relevant legal and factual questions and that the issues are unlikely to be raised if the party is denied

standing." *Id.* (discussing the test established by *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983)) (internal quotation marks omitted). For example, in *Sierra Club*, we found that the Sierra Club was an appropriate party because it had the necessary interest in ensuring that the power plant at issue was constructed and operated in compliance with all applicable state and federal environmental laws and administrative procedures. *Id.* ¶ 42. Further, we explained that the Sierra Club had the "interest and expertise necessary to investigate and review all relevant legal and factual questions relating to the plant." *Id.*

¶ 17 Similarly, in this case, CME has the necessary interest and expertise. CME, as an adjoining property owner or occupant, has a sufficient interest in the appropriate permitting of any business with which it shares a boundary, especially a business that stores or disposes of radioactive waste. As a competing business interested in storing radioactive waste, it has an interest in any modification in the locale wherein the County allows radioactive waste businesses. Yet, it is CME's involvement in the nuclear waste industry that causes EnergySolutions to assert it is not an appropriate party. That is, EnergySolutions argues that CME is an inappropriate party because it is a self-interested competitor in the hazardous waste industry. However, there is nothing in this state's standing precedent that requires a party to have a beneficent interest—or any particular character of interest. So, even though CME may be challenging the issuance of the conditional use permit and the reduction of the waste corridor because it wants to store nuclear waste itself, that does not diminish its interest. Additionally, CME has the necessary expertise to bring claims challenging the County's actions related to nuclear waste. As a competing waste-oriented business, CME has a working knowledge of the laws and regulations controlling radioactive waste and, therefore, has sufficient expertise to assist the court in developing and reviewing the legal and factual questions presented by a challenge to the County's land use decisions. Finally, no other parties are likely or, in this case, permitted to challenge the County's

actions, as the short, thirty-day time frame for doing so has already passed. Thus, CME has the sufficient interest and expertise to assist the court in adjudicating a challenge to the County's actions.

¶ 18 Second, the claims alleged by CME raise issues of significant public importance. To show that an issue is of significant importance, CME must not only show that the "issues are of a sufficient weight but also that they are not more appropriately addressed by another branch of government pursuant to the political process." *Id.* ¶ 39. And, "[t]he more generalized the issues, the more likely they ought to be resolved in the legislative or executive branches." *Id.* To illustrate, in *Sierra Club,* the court held that because power plants emit hazardous chemicals, it is of significant public importance that in granting permits government officials comply with all applicable state and federal laws. *Id.* ¶ 44. Further, the court explained that the legislative and executive branch had already addressed the issue by passing environmental legislation and adopting administrative procedures. *Id.* Thus, whether government officials actually complied with the legislation and procedures was not more appropriately addressed by other branches, but was instead the proper providence of the judiciary. *Id.*

¶ 19 Again, this case is very similar to *Sierra Club.* The land use actions challenged in this case involve an industry that poses potential environmental and health-related harms to the citizens of Tooele County. It is of significant public importance that land use decisions involving the storage of hazardous waste are properly made in accordance with state and local laws. Further, the issues presented in this case are not so general as to require legislative or administrative action. Instead, the state and the County have already addressed the issues by enacting procedures for granting a conditional use permit and by creating the hazardous waste corridor. Thus, whether the County in fact complied with its own procedures is a proper issue for judicial resolution. In sum, by challenging the County's grant of a conditional use permit to EnergySolutions and its redrawing of the hazardous waste corridor,

CME has raised issues of significant public importance. Therefore, CME, as an appropriate party, has alternative standing to raise these issues of public importance.

## II. REVERSING THE COUNTY'S ACTIONS WOULD AFFECT CME'S RIGHTS, AS WELL AS THE PUBLIC'S INTEREST, AND THEREFORE CME'S CLAIMS ARE NOT MOOT

¶ 20 " 'An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect.' " *Baker v. Stevens,* 2005 UT 32, ¶ 9, 114 P.3d 580 (quoting *Richards v. Baum,* 914 P.2d 719, 720 (Utah 1996)). In reviewing CME's standing, we have already determined whether the plaintiff's claims are redressable. Therefore, the only question remaining is if any occurrence during the pendency of the appeal has destroyed the ongoing controversy and made legal relief impossible. EnergySolutions argues that CME's claims are moot because CME no longer owns any property adjoining EnergySolutions' Section 29 property. We are not persuaded. At the time this case was argued, neither party had changed its legal position. CME still occupied the property adjoining the land covered by the amended conditional use permit. Thus, a reversal of the challenged land use actions would still affect its interests. Further, the County has not altered, repealed, or amended the challenged land use decisions. Thus, the legal controversy remains. The dissent relies on the expiration of CME's lease to argue that CME no longer has any interest in the Tooele County property. The record does indicate that CME's lease expired in May 2008, but it does not provide any information regarding the impact of the expiration because it occurred after this case was argued to this court. Therefore, because we do not know the current status of CME's property interest, it cannot be dispositive as to the parties' standing. Additionally, because CME qualifies for alternative standing, the public's interest in requiring the government to follow its own laws also still remains re-

gardless of CME's interest. Therefore, circumstances have not changed to render CME's claims moot.

## CONCLUSION

¶ 21 We conclude that CME has standing pursuant to CLUDMA as an adversely affected party. CME also has standing pursuant to the alternative standing test as an appropriate party to raise an issue of public importance. Further, reversing the County's actions would affect CME's rights, as well as the public's interest; therefore, CME's claims are not moot. Accordingly, we reverse the district court's opinion finding that CME lacks standing and that its claims are moot and remand this case to the district court for a determination of whether the County's land use decisions were valid.

¶ 22 Justice PARRISH and Justice NEHRING concur in Chief Justice DURHAM'S opinion.

DURRANT, Associate Chief Justice, dissenting:

## INTRODUCTION

¶ 23 The majority concludes that Cedar Mountain Environmental ("CME") has standing to bring its claims and that its claims as presented to the district court were not moot. Because I conclude that CME's claims are now moot, I would not reach the standing question and therefore I respectfully dissent.

## BACKGROUND

¶ 24 The district court based its dismissal of CME's claims, in part, upon mootness grounds, determining that "the Court's action on this issue will have no effect on [CME's] use of [its] leased property." When this case was pending before the district court, CME was leasing property adjacent to property that is owned and occupied by EnergySolutions and that is potentially the site of EnergySolutions' expanded hazardous waste activities. After the district court ren-

dered its decision, and while the case was pending before this court, CME's lease of that property expired. Nothing in the record, the briefing, or the arguments before this court indicates that CME has entered into a new lease agreement. Further, the lease indicated that its terms "[i]n no event shall . . . extend beyond [May 31, 2008] without the prior written consent of [EnergySolutions], which consent may be granted or withheld in [EnergySolutions'] sole discretion." The record is void of any indication, written or otherwise, that EnergySolutions consented to continue the terms of the lease. Rather, all parties in their briefing refer only to the lease agreement that has since expired.

¶ 25 The expired lease agreement between CME and EnergySolutions specifically prohibited CME from competing with EnergySolutions. The lease stated

> 4. *Use of Premises.* Any use of the Premises by [CME] may not restrict or interfere with [EnergySolutions'] businesses, as determined by [EnergySolutions] in its sole discretion. . . . [CME] may also use the property for similar waste handling and transportation functions so long as such use does not compete or conflict with [EnergySolutions'] businesses, as determined by [EnergySolutions] in its sole discretion.

Before the district court and in its brief to this court, EnergySolutions states that if CME were to store hazardous waste on the leased property, then CME would be competing with EnergySolutions and accordingly in violation of its lease.

## ANALYSIS

¶ 26 Claims become moot when the "circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect."[1] The mootness doctrine stems from the general principle that courts should not issue advisory opinions:

> "The function of appellate courts, like that of courts generally, is not to give opinions on merely abstract or theoretical matters,

---

1. *Richards v. Baum,* 914 P.2d 719, 720 (Utah 1996) (holding that an appeal became moot when the party sold the real estate that formed the basis of the claims).

but only to decide actual controversies injuriously affecting the rights of some party to the litigation, and it has been held that questions or cases which have become moot or academic are not a proper subject to review." [2]

"An issue on appeal is considered moot when 'the requested judicial relief cannot affect the rights of the litigants.' " [3] Unlike standing, which must be determined by the facts that existed at the time the suit was filed,[4] mootness can be determined by facts that change or develop as the suit is pending. Indeed, facts that change after a district court renders a judgment can make an appeal moot, such that the appellate court is not in a position to review the district court decision.[5] Regardless of when mootness is determined, the test remains whether the requested judicial relief can affect the rights of the litigants. The burden of persuading the court that an issue is moot "lies with the party asserting mootness." [6]

¶ 27 CME requested that the district court find that Tooele County's decisions to reduce the size of the hazardous waste corridor and to grant EnergySolutions' application for an amendment to its conditional use permit were arbitrary, capricious, or illegal. Accordingly, CME sought to have the district court declare the county's two decisions unenforceable. Because, in my view, declaring these decisions unenforceable will not affect CME's rights, I conclude that CME's claims are moot.

¶ 28 CME has asserted a number of possible injuries resulting from the county's decisions that it claims could be remedied by declaring the decisions unenforceable. First, CME contends that the redrawing of the corridor effectively excluded CME's parcel on Section 29, as well as any other land originally in the corridor not owned by EnergySolutions that CME could have potentially purchased. Second, as a tenant of a parcel on Section 29, CME contends that the land CME was leasing will be negatively affected due to radioactive drift from potential operations on EnergySolutions' newly acquired property. And finally, CME states that it has an interest in protecting the public's right to a fair administrative process. CME contends that this public interest has been harmed by Tooele County's decisions. I consider each of CME's alleged injuries in turn.

## I. REDRAWING THE CORRIDOR DOES NOT AFFECT ANY OF CME'S CURRENT RIGHTS

¶ 29 CME argues that successfully challenging Tooele County's changes to the corridor will affect CME's rights in two ways. First, a successful challenge will effectively restore CME's leased parcel on Section 29 to the corridor, thereby allowing CME to use the parcel for hazardous waste storage. Second, returning the corridor to its original size will allow CME to purchase additional land within the corridor to conduct waste storage activities.

¶ 30 I conclude that the requested relief will not affect CME's rights on either theory. With regard to CME's leased parcel, the lease expired on May 31, 2008.[7] Further, the lease prohibited CME from competing with

2. *McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974) (quoting 5 Am.Jur.2d, Appeal and Error, § 761).

3. *State v. Sims,* 881 P.2d 840, 841 (Utah 1994) (quoting *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989)).

4. *Utah Ass'n of Counties v. Bush,* 455 F.3d 1094, 1099 (10th Cir.2006).

5. *Richards,* 914 P.2d at 720; *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989) (dismissing an appeal of a trial court's decision to revoke a driver license because the one-year revocation period had expired); *McRae,* 526 P.2d at 1192 (dismissing an appeal of a trial court's declaration that a regulation prohibiting private driver's education to persons under the age of 17 was null and void because the plaintiffs already received their driver licenses).

6. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

7. After Tooele County argued in its brief that CME's lease was soon to expire, CME responded only with the statement that it was currently leasing a parcel on Section 29 and included as support the lease dated May 20, 2005, which expired on May 31, 2008. CME did not rebut the argument that its lease of the parcel was soon to expire.

EnergySolutions. Therefore, even if the parcel that CME had leased from EnergySolutions was part of the corridor, CME could not use the parcel for waste storage because CME no longer has any interest in the parcel and any interest that CME had restricted CME from conducting waste storage on the parcel. Accordingly, the relief CME requests in this case would not affect CME's rights regarding use of the parcel on Section 29.

¶ 31 With regard to the potential purchase of other property that was excluded from the redrawn corridor, CME does not have any actual rights associated with that property. CME is not leasing, nor does CME own any parcel of that property. We do not recognize a protectable right to purchase property unless that right is conferred by contract. Because CME has no contractual rights pertaining to the other property that was excluded from the redrawn corridor, there is no way in which our overturning Tooele County's decisions will affect CME in relation to that property.

## II. THE ALLEGED INCREASES IN RADIOACTIVE DRIFT DO NOT AFFECT CME, WHICH NO LONGER HAS ANY INTEREST IN THE ADJOINING PROPERTY

¶ 32 CME contends that as a leasee of a parcel of land that is adjacent to EnergySolutions' newly acquired land, CME faces increased risks from EnergySolutions' waste disposal activities. CME further contends that if we grant the relief CME requests CME would not face these increased risks. CME's arguments are unpersuasive. CME's lease for the parcel in question has expired. Accordingly, CME no longer faces the risks that it has alleged.

## III. THE MOOTNESS DOCTRINE PROHIBITS LAND USE CHALLENGES TO CONTINUE AFTER ALL OF THE LITIGANT'S RELEVANT PROPERTY RIGHTS HAVE BEEN TRANSFERRED

¶ 33 Finally, CME claims that the public has a right, which CME seeks to enforce, to a fair and impartial administrative process.

The majority agrees with CME's argument and determines that CME has alternative standing based on its representation of this public interest. Although somewhat facially persuasive, CME's argument would create dire long-term consequences for the mootness doctrine. Under CME's argument, no matter how the circumstances may change, a party could always argue that, at the very least, the requested relief would affect the integrity of the administrative process. Accordingly, the adoption of CME's position would effectively eviscerate the mootness doctrine as it pertains to land use challenges. For this reason, I decline to adopt CME's reasoning.

### CONCLUSION

¶ 34 CME's claims are now moot because CME does not have a right that will be affected if the district court were to declare Tooele County's decisions unenforceable. CME does not have any potentially affected property rights because CME does not own, nor does CME at this time lease, any property in the vicinity of the corridor. Further, the mootness doctrine prohibits land use challenges from continuing after all of the litigant's relevant property rights have been transferred. For these reasons, I would dismiss this appeal.

¶ 35 Justice WILKINS concurs in Associate Chief Justice DURRANT'S dissenting opinion.