*This opinion is subject to revision before final publication in the Pacific Reporter*

**2021 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SOUTHERN UTAH WILDERNESS ALLIANCE,
*Appellant,*

*v.*

SAN JUAN COUNTY COMMISSION,
*Appellee.*

No. 20180410
Heard September 9, 2020
Filed February 25, 2021

On Direct Appeal

Seventh District, San Juan
The Honorable Lyle R. Anderson
No. 170700016

Attorneys:

Troy L. Booher, J. Frederic Voros, Dick J. Baldwin, Stephen H. M. Bloch, Laura E. Peterson, Salt Lake City, for appellant

Kendall G. Laws, Matthew J. Brooks, Monticello; Stewart O. Peay, John W. Andrews, Kristin A. Baughman, Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 The Southern Utah Wilderness Alliance (SUWA) filed a complaint in which it alleged that the San Juan County

Commission violated a number of SUWA's rights under Utah's Open and Public Meetings Act.[1] The Act requires the Commission to comply with certain requirements whenever the Commission convenes a meeting for the purpose of discussing, receiving public comment about, or acting upon a "matter" over which the Commission has "jurisdiction or advisory power." But the district court dismissed SUWA's complaint because, in the court's view, SUWA failed to allege that the participants in the meetings in question had discussed a matter over which the Commission had jurisdiction or advisory power. We disagree with the court's determination.

¶2 The district court interpreted the terms "matter," "jurisdiction," and "advisory power," as they appear in the Act, to limit the Act's application to only those meetings in which a public body discusses taking a potential action within its authority, receives public comment about taking a potential action, or votes to take an action. But although the court may have correctly interpreted the Act, we nevertheless reverse its dismissal of SUWA's complaint and remand for additional proceedings without addressing the merits of the court's interpretation.[2]

¶3 We do so because the district court appears to have based its dismissal of SUWA's claims on certain factual assumptions that do not necessarily follow from the allegations in SUWA's complaint. And with a correct view of SUWA's complaint in mind, we conclude that, even under the court's (and the

---

[1] UTAH CODE §§ 52-4-101 to 52-4-305.

[2] We set forth the parties' competing interpretations of the Act in greater detail below. *See infra* ¶¶ 29–34.

We also note that district court went one step beyond dismissing SUWA's complaint. It concluded that SUWA's claims were so lacking in merit as to be frivolous. And it found that SUWA initiated the lawsuit for an improper purpose. For this reason, it imposed sanctions on SUWA under Rule 11 of the Utah Rules of Civil Procedure. Because the reasoning underlying our reversal of the district court's order dismissing SUWA's complaint also undermines the basis of the court's rule 11 order, we likewise reverse that order.

Commission's) interpretation of the Act, SUWA's complaint was sufficient to survive dismissal.[3]

## Background

¶4 Throughout May and June of 2017, the San Juan County Commission met with members of the federal government on multiple occasions to discuss the federal government's potential revocation, or potential partial revocation, of the Bears Ears National Monument. In these meetings, participants also allegedly discussed the implications this action would have for San Juan County's political, economic, business, and development interests and relationships. The Commission did not provide public notice for the meetings nor did it allow the public to attend.

¶5 After learning about the meetings, SUWA filed its complaint, alleging that the Commission had violated Utah's Open and Public Meetings Act by failing to provide public notice of the meetings and by not permitting the public to attend.[4] According to SUWA's allegations, the Act governed the meetings because the participants discussed "matters over which [the Commission] exercise[s] jurisdiction [or] advisory power."

¶6 After the complaint was filed, the district court dismissed the lawsuit, under rule 12(b)(6) of the Utah Rules of Civil Procedure, for a failure to state a claim warranting relief. According to the court, the Act did not apply to the meetings in question because the Commission did not have jurisdiction or advisory power over the matters discussed. The court also imposed sanctions on SUWA for violating rule 11(b) of the Utah Rules of Civil Procedure. According to the court, SUWA violated

---

[3] As we note above, we decline to offer a definitive interpretation of the Act at this time because our decision to reverse the district court does not require it. But we also note the benefit in waiting to interpret the Act until we have the advantage of a developed factual record. *See Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141 (explaining that a clear factual record "facilitates informed decisions").

[4] SUWA originally filed this action in the Third District Court, but on the Commission's motion it was moved to the Seventh District Court.

rule 11(b) by raising frivolous legal arguments and bringing a lawsuit for an improper purpose.[5]

¶7   SUWA appeals both decisions. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**Standards of Review**

¶8   We must address two issues on appeal. The first is whether SUWA has standing to bring a claim against the Commission under the Act. When evaluating standing at the motion-to-dismiss stage, the question of standing is primarily a question of law, which we review for correctness.[6]

¶9   The second issue is whether the district court erred in granting the Commission's rule 12(b)(6) motion to dismiss for failure to state a claim. We "review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court."[7]

**Analysis**

¶10 SUWA argues that the district court erred in dismissing its complaint. According to SUWA, the district court (and the Commission) have interpreted the Act too narrowly. But we reverse the district court's dismissal of SUWA's complaint without deciding between the parties' competing interpretations of the Act. This is because even were we to adopt the Commission's proposed interpretation, we would nevertheless conclude that SUWA has made sufficient allegations to defeat a motion to dismiss.

¶11 SUWA also argues the district court erred in imposing rule 11 sanctions. Because our decision regarding the district court's dismissal upends the basis of the court's rule 11 order, we likewise reverse that order.

---

[5] This determination was based, in part, on the district court's review of a number of 2015 blog posts on SUWA's website. But these blog posts were not presented to the court by either party. Courts should refrain from this type of independent factual investigation. *See* CODE OF JUD. CONDUCT 2.9(c).

[6] *Brown v. Div. of Water Rts. of Dep't of Nat. Res.*, 2010 UT 14, ¶¶ 14–16, 228 P.3d 747.

[7] *Gregory v. Shurtleff*, 2013 UT 18, ¶ 8, 299 P.3d 1098 (citation omitted).

¶12 We discuss our reasoning in greater detail below. But before we address the merits of this appeal, we must consider whether SUWA has standing.

## I. SUWA Has Standing

¶13 The Commission argues SUWA does not have standing to raise the issue of whether SUWA's rights under the Act were violated. According to the Commission, SUWA lacks standing because, under a correct interpretation of the Act, SUWA did not have a right to attend the meetings in question. But the Commission mistakenly conflates the issue of standing with the merits of SUWA's claim.

¶14 A challenge to a party's standing, "in contrast to challenges to the merits of a plaintiff's claims, raises fundamental questions regarding a court's basic authority over the dispute."[8] To have standing, a party must satisfy our three-part test for standing. First, the party must "assert that it has been or will be *adversely affected* by the [challenged] actions."[9] Second, it must "allege a causal relationship between the injury to the party, the [challenged] actions, and the relief requested."[10] And third, it must "request relief that is substantially likely to redress the injury claimed."[11] SUWA satisfies these requirements.[12]

---

[8] *Brown v. Div. of Water Rts. of Dep't of Nat. Res.*, 2010 UT 14, ¶ 13, 228 P.3d 747.

[9] *Cedar Mountain Env't, Inc. v. Tooele Cnty.*, 2009 UT 48, ¶ 8, 214 P.3d 95 (citation omitted) (internal quotation marks omitted).

[10] *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted).

[11] *Id.* (citation omitted) (internal quotation marks omitted). Our case law sometimes states that a party must "show" or "prove" that the elements of our standing test are satisfied, *see, e.g.*, *Haik v. Jones*, 2018 UT 39, ¶ 18, 427 P.3d 1155 ("[S]tanding 'requires a plaintiff to *show* some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute.'" (emphasis added) (citation omitted), and at other times it suggests that the party must only "assert," "claim," or "allege" facts that would satisfy the test. *See, e.g.*, *Cedar Mountain*, 2009 UT 48, ¶ 8 (discussing the requirements by using the terms "assert" and "allege"). What is needed to satisfy our standing requirement depends on the stage of the legal proceeding. *Brown*, 2010 UT 14,

(Continued)

*A. SUWA satisfies the "adversely affected" requirement*

¶15 SUWA argues the Commission's alleged violation adversely affected SUWA because the violation denied SUWA its statutory right to receive notice of, and to attend, the meetings held by members of the Commission. When a party argues that a right conferred by statute has been violated, we resolve the "adversely affected" issue by first determining "what class of plaintiffs the [statute] grants a right to sue and whether [the

---

¶¶ 13–15. At the pleading stage, plaintiffs are required only to "claim" or "allege" facts showing a legal injury. But where plaintiffs' factual, standing-related allegations are in dispute at later stages, plaintiffs must show or prove standing by satisfying the applicable burden of proof. *See Washington Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 4, 82 P.3d 1125 (affirming the district court's dismissal for lack of standing because the party "had not carried its burden of showing a connection between" the challenged action and the alleged harm). In these cases, a court should not decide the standing issue until the evidence in the case makes clear that there is not a genuine dispute as to the relevant facts (in other words, at the summary judgment stage) or until the fact finder has determined which version of the facts is the correct one (at the trial stage).

[12] Our conclusion on this point is predicated on the doctrine of "associational standing." *Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 21, 148 P.3d 960. Under this doctrine, "[a]n association," such as SUWA, "has standing if its individual members have standing and the participation of the individual members is not necessary to the resolution of the case." *Id.* SUWA argues that it meets the requirements of associational standing in this case. The Commission, on the other hand, argues that SUWA lacks standing because SUWA's individual members also lack standing. So the Commission does not dispute that were we to conclude that SUWA's members have standing, SUWA would have associational standing. Based on this, and to improve readability, we analyze our standing requirements by discussing the statutory rights conferred on SUWA's members and the injuries allegedly suffered by those members as though they belong to SUWA.

plaintiff in the case] is within that class."[13] In other words, we must determine whether the plaintiff has a "legally protectible interest" conferred by statute.[14]

¶16 This part of the analysis looks at the rights generally conferred by the statute. So in this case we must determine whether the Act generally provides SUWA with a right to sue for violations of the Act. We conclude it does.

¶17 The Act states that "meetings" must be "open to the public"[15] and that the public body convening the meeting must provide at least "24 hours' public notice of each meeting."[16] And the Act provides that a "person denied any right under [the Act] may commence suit in a court of competent jurisdiction to (a) compel compliance with or enjoin violations of [the Act], or (b) determine the [Act's] applicability to discussions or decisions of a public body."[17] Based on these provisions, we conclude that SUWA falls within the class of persons sought to be protected by the Act and that the Act provides SUWA with a right to sue for violations of the Act. But that does not end the "adversely affected" inquiry.

¶18 Where a plaintiff falls within a class protected by statute, we must also determine, based on the specific facts in the case, whether the plaintiff has suffered "some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute."[18] At the pleading stage, this merely requires the plaintiff to plead an "adequate factual context to satisfy our notice pleading requirements."[19] In other words, the plaintiff must allege sufficient facts so that the defendant is reasonably aware of the

---

[13] *Rupp v. Moffo*, 2015 UT 71, ¶ 9, 358 P.3d 1060. We commonly refer to standing that is derived from a statutory right as "statutory standing." *See Cedar Mountain*, 2009 UT 48, ¶ 13.

[14] *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (citation omitted).

[15] UTAH CODE § 52-4-201.

[16] *Id.* § 52-4-202.

[17] *Id.* § 52-4-303.

[18] *Jenkins*, 675 P.2d at 1148.

[19] *Brown*, 2010 UT 14, ¶ 21.

conduct it allegedly engaged in and of how that conduct allegedly injured the plaintiff. SUWA satisfies this test.

¶19 In its complaint, SUWA alleged that (1) on multiple occasions, members of the Commission attended meetings with officials of the Federal Government, (2) the Commission did not provide public notice of the meetings or allow members of the public (including SUWA's members) to attend, and (3) the Commission's failure to provide notice or open up the meeting for public attendance violated SUWA's rights under the Act. So SUWA has identified a distinct injury—the loss of an opportunity to hear about and attend certain meetings it wanted to attend. This satisfies the "adversely affected" requirement.

### B. SUWA satisfies the "causal relationship" requirement

¶20 SUWA has also sufficiently alleged a causal relationship between its asserted injury and the challenged action. SUWA alleged that its members were available and would have attended the meetings had the Commission provided public notice and permitted public attendance. In other words, the Commission's alleged violations of the Act were a direct cause of SUWA's lost opportunity to hear about and attend the meetings it wanted to attend. This satisfies the "causal relationship" requirement.

### C. SUWA requested relief that would redress its injury

¶21 Finally, SUWA has requested relief that would redress its alleged injury. It has requested "a decree that the [meetings at issue] violated the Act pursuant to Utah Code § 52-4-303(3)(b)." It also asks for "an injunction compelling [the Commission's] compliance with the Act and enjoining [the Commission] from further violating the Act pursuant to Utah Code § 52-4-303(3)(a)." This requested relief is explicitly authorized by the Act. Section 52-4-303 of the Act provides that where a person is denied "any right" under the Act, the person may request the court to (1) "compel compliance with or enjoin violations" of the Act and (2) "determine the [Act's] applicability to discussions or decisions of a public body."

¶22 The Commission argues that neither of these remedies would redress SUWA's alleged harms because the identified meetings were "not intended to be reoccurring meetings" and "there will not be future meetings bearing resemblance to the meetings in question." But even were we to accept this as true, we would nevertheless conclude that the authorized statutory remedies would redress SUWA's alleged harm.

¶23 For example, the district court could redress SUWA's alleged harm by requiring the Commission to comply with section 52-4-203 of the Act. This section obligates public bodies to keep written minutes of all meetings subject to the Act. These minutes must include, among other things, "the substance of all matters proposed, discussed, or decided by the public body which may include a summary of comments made by members of the public body."[20] Following a meeting, a public body has thirty days to make a pending, draft form of these written minutes available to the public.[21] And it has three days following the approval of pending minutes to make the approved minutes available.[22] SUWA has alleged it was harmed by the Commission's failure to comply with these requirements.

¶24 In its complaint, SUWA alleged that the Commission violated the Act in several ways, including by failing to create and allow access to written minutes and recordings of the meetings. So in the event the district court determines that the Commission violated SUWA's statutory rights, it could redress this violation by ordering the Commission to comply with section 52-4-203 to the extent possible.[23] So, based on the Act's explicitly authorized remedies, we conclude that SUWA has satisfied the third standing requirement. Accordingly, we conclude that SUWA has satisfied all three of the requirements necessary for standing.

¶25 The Commission argues, however, that SUWA lacks standing because the meetings in question do not qualify as the type of "meeting" governed by the Act. In other words, the Commission argues SUWA does not have standing to raise a challenge under the Act because SUWA bases its challenge on a misinterpretation of the Act's provisions. But this argument incorrectly conflates the issue of standing with the merits of SUWA's statutory claim.

---

[20] UTAH CODE § 52-4-203(2)(a)(iii).

[21] *Id.* at § 52-4-203(4)(e)–(f).

[22] *Id.*

[23] It is possible, of course, that no recordings of the meetings exist. If this is true, then the court could redress SUWA's injury by ordering the Commission to provide a written summary of "the substance of all matters proposed, discussed, or decided" by the Commission at the meetings. *See id.* § 52-4-203(2)(a)(iii).

¶26 As we explain in *SUWA v. Kane County*, a companion case that also issues today, whether a plaintiff has standing does not depend on the merits of the plaintiff's argument that particular conduct violated the plaintiff's rights.[24] As courts have consistently recognized, "a plaintiff can have standing despite losing on the merits."[25] This is because where the facts show (or, at the pleading stage, where plaintiff's factual allegations show) that a plaintiff has been injured in a distinct and palpable manner, a court has the authority to determine whether that injury constitutes an infringement of a judicially protected interest. Thus the dispute presented by the plaintiff is "fit for judicial resolution."[26]

---

[24] *See SUWA v. Kane Cnty.*, 2021 UT __, ¶¶ 17–20, ---P.3d---; *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."); *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) ("[O]ne must not 'confus[e] weakness on the merits with absence of Article III standing.'" (alteration in original) (quoting *Davis v. U.S.*, 564 U.S. 229, 249 n.10 (2011))); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal." (alteration in original) (citation omitted) (internal quotation marks omitted)).

[25] *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006); *see also id.* ("[A]n interest can support standing even if it is not protected by law (at least, not protected in the particular case at issue) so long as it is the sort of interest that courts think to be of sufficient moment to justify judicial intervention.").

[26] *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 17 (citation omitted); *see also Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017) (explaining that whether a plaintiff has standing "does not hinge on whether the conduct alleged to violate a statute does, as a matter of law, violate the statute"); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1094 (10th Cir. 2006) ("[W]here the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right . . . , the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected.").

¶27 So it is in this case. SUWA has alleged that the Commission denied SUWA an opportunity to attend a number of meetings it wished to attend. And, as a result, SUWA has requested relief specifically authorized by the Act. The district court has authority to determine whether this denial violated SUWA's statutory rights and whether SUWA is entitled to its requested relief.[27] In other words, the legal dispute between SUWA and the Commission is fit for judicial resolution.

## II. The District Court Erred in Granting the Commission's Motion to Dismiss

¶28 We now consider whether the district court erred in dismissing SUWA's claim. The district court dismissed the case after concluding that the Commission's meetings did not qualify as "meetings" governed by the Act. In other words, although it is undisputed that members of the Commission met with members of the federal government, the district court concluded that the term "meeting," as defined by the Act, does not include the meetings at issue in this case. The Commission agrees with this interpretation.

¶29 But SUWA argues that the term "meeting" should be interpreted to include the meetings in question. The Act defines a "meeting" as "the convening of a public body . . . for the purpose of discussing, receiving comments from the public about, or acting upon a matter over which the public body . . . has jurisdiction or advisory power."[28] So to qualify as a meeting under the Act, a public body must, at the very least, discuss a "matter" over which the public body has "jurisdiction or advisory power." According to SUWA, the meetings qualify because the purpose of the meetings was to discuss the implications of a possible revocation of the Bears Ears National Monument on "San Juan County's political, economic, business, and development interests and relationships."

¶30 To be clear, SUWA does not argue that the Commission had any authority over the federal government's potential decision to revoke the Monument. But, because the Commission

---

[27] *Brown*, 2010 UT 14, ¶ 13 (explaining that a challenge to standing raises "fundamental questions regarding a court's basic authority over the dispute").

[28] UTAH CODE § 52-4-103(6)(a).

has been granted broad powers related to the county's interests,[29] and because a topic discussed at the meetings was the possible effect of a federal action on the county's interests, SUWA argues that the meetings' purpose was to discuss a matter over which the Commission has jurisdiction or advisory power. So SUWA interprets the phrase "a matter over which [the Commission] has jurisdiction or advisory power" to include any meeting in which a proposed action that could affect the county's interests is discussed, even if the Commission has no authority over the proposed action.

¶31 The Commission, on the other hand, argues that the Act's definition of "meeting" does not include the meetings in question because the Commission lacks jurisdiction or advisory power over the federal government's potential decision to revoke the Monument, which was the only potential action discussed at the meetings. In other words, the Commission interprets the phrase "a matter over which [the Commission] has jurisdiction or advisory power" to include only meetings in which the Commission takes an action within its authority or in which it discusses or considers taking an action within its authority.

¶32 As the parties have framed the dispute, the success or failure of their respective arguments depends on how we define the term "matter" as it is used in the Act. Under SUWA's interpretation, the term "matter" takes on a broad meaning roughly synonymous with the term "topic"[30] or "subject."[31] Were we to interpret "matter" in this way, the meetings would be governed by the Act because the Commission discussed a topic

---

[29] *Id.* § 17-50-302(1)(a)(ii) (stating that a county may "provide a service, exercise a power, or perform a function that is reasonably related to the safety, health, morals, and welfare of county inhabitants").

[30] *Topic*, Collins Dictionary Online, https://www.collinsdictionary.com/dictionary/english/topic (last visited January 7, 2021) ("A topic is a particular subject that you discuss or write about.").

[31] *Subject*, Collins Dictionary Online, https://www.collinsdictionary.com/dictionary/english/subject (last visited January 7, 2021) ("The subject of something such as a conversation, letter, or book is the thing that is being discussed or written about.").

over which the Commission has jurisdiction or advisory power: county interests.

¶33 The Commission's argument, on the other hand, suggests that the "matter" discussed at the meeting should be viewed more narrowly as the potential revocation of the Monument. Under this view, the term "matter" is defined as "a subject or situation that you must consider or deal with."[32] So under the Commission's definitions, a "matter" is a "subject" or "situation" necessitating a decision to be made or an action to be taken.

¶34 The Commission argues that, under its interpretation of the Act, we must affirm the district court's dismissal because the only "matter" SUWA alleges the Commission discussed was the potential decision to revoke the Monument—an action the Commission had no jurisdiction or advisory power over. But this decision incorrectly assumes that the only potential action discussed at the meetings was the federal government's revocation of the Monument. This assumption overlooks key portions of SUWA's complaint.

¶35 In its complaint, SUWA first alleges that "the subject matter of the discussions at each of the Closed Meetings involved, among other things, the possible revocation—or partial revocation—of the Bears Ears National Monument." As the Commission interprets the Act, this would not qualify as a meeting because the Commission has no jurisdiction or advisory power over the discussed action—the revocation of the Monument. But that is not the only alleged "matter" contained in SUWA's complaint. SUWA also alleges the Commission discussed the "potential implications" the Monument revocation would have "for San Juan County's political, economic, business, and development interests and relationships" as well as "other similar matters over which [the Commission] exercise[s] jurisdiction [or]

---

[32] *Matter*, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/matter_1?q=matter (last visited January 7, 2021); *see also Matter*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/matter (last visited January 7, 2021) ("[A] subject under consideration."); *Matter*, NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1988) ("[S]omething that is the subject of discussion, concern, action.").

advisory power." This is enough to satisfy SUWA's pleading obligations even were we to accept the Commission's interpretation of the Act.

¶36 As we have discussed, the Commission interprets the term "meeting," as it is used in the Act, to limit the Act's scope to only those meetings in which a public body discusses taking an action or making a decision under its authority, solicits public comment about taking a proposed action or decision, or takes an action or makes a decision. But SUWA's complaint satisfies this proposed interpretation because it can reasonably be read to allege that the Commission discussed taking potential actions within its authority. The complaint alleges that the meeting participants discussed "San Juan County's political, economic, business, and development interests and relationships" and "other similar matters" over which the Commission has authority. These statements could reasonably be interpreted as alleging that the Commission discussed potential actions it might take in anticipation of, or in response to, the federal government's decision to revoke the Monument.

¶37 Based on the circumstances presented in this case, we conclude that this is enough to survive a motion to dismiss even were we to adopt the Commission's interpretation of the Act. Accordingly, we reverse the district court's dismissal of SUWA's complaint and remand for additional proceedings.

¶38 In so doing, we note that for other claims SUWA's allegations might not satisfy the pleading requirements contained in rule 8 of the Utah Rules of Civil Procedure. But our decision is motivated, in part, by the disadvantaged position of potential plaintiffs who bring a lawsuit to enforce the Act.

¶39 Rule 8 requires that all claims for relief contain a "statement of the claim showing that the party is entitled to relief" and a "demand for judgment for specified relief."[33] Rule 8 also requires us to construe all pleadings "to do substantial justice."[34] Taken together, these requirements lead to a "context specific and flexible" approach in applying our rules to parties' pleadings.[35]

---

[33] UTAH R. CIV. P. 8(a).

[34] *Id.* 8(f).

[35] *State v. Apotex Corp.*, 2012 UT 36, ¶ 27, 282 P.3d 66.

¶40    Under this approach we require only "that the basis of [the] claim must be stated with reasonable certainty and clarity, so the other party will have notice of what he is obliged to meet."[36] In other words, pleadings are "sufficient" where they "give fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved."[37]

¶41    And what is required to provide "fair notice" depends on the type of claim. For example, in *Berg v. Berg*, the court of appeals allowed a claim for conversion to go forward although the pleading was "imprecise," because the pleading could be fairly read to "indicate[] a claim for conversion" and it identified the property at issue.[38] For other claims, however, a plaintiff "must state with particularity the circumstances" surrounding the claim.[39]

¶42 Yet even for those claims, our "context specific and flexible" approach sometimes leads us to relax the pleading standard. For example, in *State v. Apotex Corp.*, we considered the adequacy of a claim under Utah's False Claims Act.[40] Although we concluded that claims under the False Claims Act were subject to our heightened pleading requirement, we explained that our "heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control."[41] For this reason, and "to achieve the remedial purpose"[42] of the False Claims Act, we held that a claim was sufficient so long as it provided "reliable indicia

---

[36] *Christopher v. Larson Ford Sales, Inc.*, 557 P.2d 1009, 1011 (Utah 1976).

[37] *Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 40, 232 P.3d 1059 (citation omitted).

[38] 2012 UT App 142, ¶ 10, 278 P.3d 1071 (explaining that a pleading was sufficient where it "indicated a claim for conversion" and identified the property at issue).

[39] *See* UTAH R. CIV. P. 9(c) (requiring "fraud" and "mistake" claims to be pled with particularity).

[40] 2012 UT 36.

[41] *Apotex*, 2012 UT 36, ¶ 27 (citation omitted).

[42] *Id.*

that lead to a strong inference" that a statutory violation occurred.[43]

¶43 In this case, we similarly set forth a relaxed standard for claims arising under Utah's Open and Public Meetings Act.[44] In so doing, we note that it is likely that almost all cases seeking to enforce the Act will have arisen because the plaintiff was prevented from knowing what took place at a meeting allegedly governed by the Act. Were we to require the plaintiff to allege the "matter" discussed at the meetings more specifically, the government's alleged statutory violation—the failure to inform the public about a meeting—would insulate the government from suit in almost all cases. In this way, the remedial purpose of the Act would be frustrated. Rule 8 does not require this result.[45]

¶44 Rather, rule 8 requires only that the pleadings provide the other party with adequate notice regarding the nature of the claims or defenses.[46] In the context of the Act, pleadings will provide defendants with adequate notice when they specifically identify the meeting or meetings at issue and contain "reliable indicia that lead to a strong inference" that "matters" under the public body's jurisdiction were discussed.[47] SUWA's pleadings satisfy this standard. SUWA has specifically identified meetings in

---

[43] *Id.* ¶ 29 (citation omitted).

[44] We are, of course, aware that claims under the Open Meetings Act are not subject to the heightened pleading standard in rule 9(c). So we cite our decision in *Apotex* only to provide an example of how we have previously applied our context specific and flexible approach to pleading requirements.

[45] *See* UTAH R. CIV. P. 8(f) ("All pleadings will be construed to do substantial justice.").

[46] *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 970 (Utah 1982) (explaining that our pleading requirements "must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute" while providing defendants with "notice of the issues raised and an opportunity to meet them" (emphasis omitted) (citation omitted)).

[47] *Apotex*, 2012 UT 36, ¶ 29 (citation omitted).

which its alleged violations of the Act occurred and it has alleged factual circumstances leading to a strong inference that statutory violations took place. In short, SUWA's complaint provides the Commission adequate notice and a fair opportunity to respond to SUWA's claims.

## Conclusion

¶45 We conclude that SUWA has standing to bring a challenge under the Act. This is because SUWA falls within the class of people the Act seeks to protect and because SUWA has alleged a sufficient set of facts to satisfy our standing requirements.

¶46 We also conclude that the district court erred in dismissing SUWA's claims because the pleadings in SUWA's complaint were sufficient even were we to adopt the Commission's proposed interpretation of the Act. For this reason, it is unnecessary to offer a definitive interpretation of the Act at this time. Instead, we reverse and remand for additional proceedings below.[48]

---

[48] Because our determination on this point undermines the basis of the district court's order imposing rule 11 sanctions on SUWA, we also reverse the rule 11 order.